# EDWIN F. MARTIN, JR., by Next Friend *vs.* J. JESSE MOORE et al.

*Action of Assault and Battery Against Superintendent of House of Correction by Prisoner Who Had Been Flogged—Evidence—Photograph.*

While plaintiff was serving a term of imprisonment in the House of Correction he was brought before the Superintendent one morning and charged with disorderly conduct during the preceding night. The Superintendent directed an employee to punish plaintiff for the offence in the manner prescribed by the rules of the institution. This employee gave plaintiff five lashes with a cat-o'-nine-tails on the bare back. In an action against the Superintendent for assault and battery, plaintiff testified that the punishment was inflicted in a cruel and brutal manner, which caused severe injuries. The defendant was not present when plaintiff was flogged and gave no other order concerning the punishment than that above mentioned. *Held,* that, even assuming that plaintiff was punished in a malicious and unusual manner, yet there is no evidence that such assault was authorized by the defendant and consequently the case was properly withdrawn from the jury.

.In an action to recover damages for an assault and battery, a photo-
graph of plaintiff alleged to have been taken soon after the assault is
not admissible in evidence when unaccompanied by any proof of the
correctness thereof.

In an action against the Superintendent of the House of Correction for
alleged excessive corporeal punishment inflicted upon plaintiff, the latter
may be asked on cross-examination what he was doing in the House of
Correction, and how long he had been there.

Appeal from the Circuit Court for Anne Arundel County
(REVELL, J.)

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*James W. Owens* and *John L. G. Lee,* for the appellant.

The *undisputed* evidence shows that J. Jesse Moore ordered
Martin "punished and beaten" and that immediately there-
after he was taken in execution of said order by Derr the
agent of Moore, and beaten as above.    And although Moore
did not witness Derr doing the beating, he was in the next
room with the door open between and could hear the victim's
screams, and the victim could hear him eating his breakfast.
"Everybody present aiding and abetting the assault is respon-
sible."   *Sellman* v. *Wheeler,* 95 Md. 751.    Presence means on
the spot, and hearing denotes presence as well as seeing.
*Riggs* v. *Riggs,* 135 Mass. 241.    A traverser was present when
in the next room.    *Lynch* v. *Commonwealth,* 88 Pa. 189.

A master is liable for the tortious acts of his agent. *Mechem
Agency,* sec. 741; *Cooley Torts,* 625.    Master is liable even
where agent acts in disobedience of order.    *P. & L. R. R.* v.
*Derby,* 14 Howard, 467.

Officers of Eleemosynary Institutions must respond individ-
ually in damages.    *Perry* v. *House of Refuge,* 63 Md. 20.
Public officers are liable individually.    *Story Agency,* sec. 319.
He who commands the act as well as he who commits the
trespass may be joined.    *Hewett* v. *Swift,* 3 Allen, 420; *Moore*
v. *Fitchburg R. R.,* 4 Gray, 467.    For direction of House of
Correction.    *Code P. G. Laws,* secs. 27, 305.

*Daniel R. Randall, State's Attorney for Anne Arundel County* (with whom was *Isidor Rayner, Attorney-General* on the brief), for the appellees.

The photograph was not admissible in evidence : (1) Because no testimony was offered on the part of the plaintiff in verification of the photograph and no one was present at the trial who could testify that the process of taking such photograph was conducted with skill and that the result was a fair resemblance of the object; the plaintiff's unsupported statement of the fact that that photograph was taken, of which the one offered was a copy, being the only evidence offered on this point. *Blair* v. *Pelham*, 118 Mass. 421; *Hynes* v. *Mc-Dermitt*, 82 N. Y. 41; *Cowley* v. *The People*, 83 N. Y. 464; *Reddin* v. *Gates*, 52 Iowa, 210; *Alberti* v. *N. Y. L. E. & W. R. R.*, 118 N. Y. 77; *Dorsey* v. *Habersack*, 84 Md. 117.

(2.) Because a photograph offered under the circumstances of this case was but secondary evidence at best, was not needed for purposes or identification, was not instructive to the jury, and its only purpose and object was to heighten the dramatic effect of the plaintiff's testimouy. *Verran* v. *Baird*, 150 Mass. 142; *Fore* v. *State*, 75 Miss. 727; *Selleck* v. *Janesville*, 104 Wis. 570.

(3.) Because the admission of a photograph in evidence is wholly in the discretion of a trial judge, and his ruling on the matter is not open to exception. *Verran* v. *Baird*, 150 Mass. 142; *Gilbert* v. *West End R. R.*, 160 Mass. 403; *Harris* v. *Quincy*, 171 Mass. 472; *Carey* v. *Hubbardstown*, 172 Mass. 106.

In Massachusetts the rule as above cited has been established by numerous decisions, *i. e.*, that the sufficiency of the preliminary proof of the correctness of the photograph offered in evidence cannot be reviewed upon exceptions. In some other States the higher Courts have undertaken to pass upon the general question of the value of photographs in evidence, confirming the Massachusetts rule, however, upon the narrower question as to the sufficiency of the preliminary proof. In the only decision in Maryland (*Dorsey* v. *Habbersack*, 84

Md. 117), the Court admitted the photograph purporting to
show the condition of a house wall, because there was suffi-
cient evidence of the experience, etc., of the photographer to
justify the Court in admitting it, and as both sides had pho-
tographs in evidence, the jury could judge of their accuracy
from the testimony of witnesses examined upon this very
point.   The case now before the Court should be distin-
guished from that in 84th Md. in view of the fact that all pre-
liminary proof is wanting to show the authenticity, etc., of the
photograph offered in evidence.

The second and third exceptions of the plaintiff to ques-
tions asked the plaintiff by defendants' counsel and allowed
by the Court are not well taken.   In their opening statement
to the jury the plaintiff's counsel took pains to narrate the
circumstances under which their client, unjustly of course,
was tried before a Justice of the Peace and committed to the
House of Correction, all of which statements they said would
be abundantly proven.

In his direct testimony young Martin stated that he was at
the House of Correction on September 2nd, 1902, the date
alleged in the declaration; that he was charged, unjustly of
course, with disorderly conduct and brought before the Super-
intendent where charges were laid against him and where he
heard his punishment pronounced; he then described most
minutely the character of that punishment and its after effects.
But nowhere did he state *why* he was at the House of Cor-
rection at all, nor how long he had been there, until defend-
ants' counsel asked the two questions to which exception was
taken.

What more pertinent inquiry then could there be than to
ask this party "What were you doing in the House of Cor-
rection on September 2nd, 1902?" and "How long had you
been there?"   They were both the legitimate subjects of
cross-examination, not only in view of the opening statement
of the plaintiff's counsel, but because it was material to the
proper understanding of the case for the jury to know whether
the party was a guest of an official, an official himself of the

institution, a chance visitor or a convicted prisoner. Moreover, he had testified in chief that he was released from custody by a *habeas corpus*, and the two questions asked him naturally followed. *Poe* "*Practice*" sec. 279–80; *Reynolds* "*Evidence*," sec. 101. Again it could not possibly work an injury to the plaintiff's case with the jury that he should be compelled to admit that he was a prisoner at the institution held under an unjust (and defective as it proved) commitment.

Admitting all the testimony to be true, because unrebutted, that the defendant Moore ordered the plaintiff to be beaten, and that as a direct result from such beating the plaintiff suffered all the injuries testified to, yet the defendants could not be held responsible in damages;

(*a*) Because as to the defendant, Cunningham, no testimony connects him with the affair at all; he was not present in person, or constructively, and the granting of the defendants' prayer as to him was almost obligatory upon the Court. Neither Mitchell nor Gehr had ever been summoned, and were not represented in Court by counsel.

(*b*) The law of the State, (Code, Art. 27, sec. 315), provides that any person committed to the House of Correction who shall be guilty of misconduct "shall be punished in such manner as the regulations prescribed by said board of managers shall provide; " and by sec. 317 of the same Article of the Code, the board may reward those prisoners whose conduct has been good, by gifts of money or a shortening of their period of confinement.

Rules were adopted by the board for a breach of which a prisoner for his first offense should receive five lashes. These rules and the punishment following upon their breach, as well as the rewards for their proper observance, the plaintiff testified were read to him by an official upon his first day of imprisonment. The plaintiff, according to his own unsupported testimony, was brought before the defendant, Moore, charged with a violation of the rules and was ordered to be taken away and beaten. He admits the punishment prescribed for

such an offense was five lashes, and these he received and no more.

Can the Superintendent of a public reformatory be liable in damages for carrying into effect rules prescribed by the State itself through its board of managers, even though he · personally inflicted the punishment in a harsh or brutal manner? How much less could he be held liable where the punishment was inflicted out of his sight by another official? If that servant went beyond the proper scope of his authority and willfully became a wrongdoer the master is exempt from liability for his acts. *Brown* v. *Purviance*, 2 H. & G., 316; *Central Ry. Co.* v. *Peacock*, 69 Md. 257; *Consolidated Ry. Co.* v. *Pierce*, 89 Md. 503; *Ritchie* v. *Waller*, 63 Conn. 155.

(*c*) Even if it had been proven that an assault committed. upon the plaintiff by a man named Gehr had taken place in the presence of the defendant Moore (and as to this the statement of the trial Judge and five members of the jury, attached to the record, is convincing that such evidence was not offered), Mr. Moore could not be held liable, unless he distinctly ordered or countenanced such an assault. The plaintiff's own testimony, is that Moore after hearing the charge of misconduct ordered the plaintiff to be taken away and punished and then went to his breakfast. Is there, in that order of Moore, an officer of the State, sitting as a Judge over the offenders within his jurisdiction, anything from which Gehr or anyone else could claim the authority to commit an assault? On the contrary his order was direct, clear and right according to the rules of the institution. He had heard the evidence in the case and he ordered his subordinate to take the offender away and mete out to him in the proper place and manner the punishment that the rules of the institution, well known to the plaintiff, required.

BRISCOE, J., delivered the opinion of the Court.

The appellant on the 25th day of October, 1902, brought an action to recover damages for an alleged assault and battery against the appellee, and others, in the Circuit Court for

Anne Arundel County.   The suit was instituted against the Board of Managers of the Maryland House of Correction, J. Jesse Moore, its Superintendent, and George T. Mitchell, W. Randolph Cunningham and Thomas Gehr, employees of the institution.

On the 23rd of October, 1903, a demurrer to the declaration was sustained and the *narr.* was amended by striking out the Board of Managers of the Maryland House of Correction as a party defendant.   Mitchell and Gehr, two of the defendants, were returned *non sunt*, and the case proceeded to trial against the appellees.   The judgment being for the defendants, the plaintiff has appealed.

Four exceptions were reserved by the plaintiff during the trial of the case.   Three of these were to the admissibility of testimony and the fourth as to the ruling of the Court upon the prayer, granted at the conclusion of the plaintiff's case, which instructed the jury that there was no evidence in the case legally sufficient to entitle the plaintiff to recover against the defendants.

The principal question presented by the appellant in his brief, and urged in argument in this Court, is whether or not the Court committed an error in granting the prayer which withdrew the case from the jury.

The facts of the case, as set out in the record, are as follows:  The plaintiff, a minor, had been committed to the Maryland House of Correction by a Justice of the Peace of the State for a period of thirty days.   On the 2nd day of September, 1902, he was brought before Mr. Moore, the superintendent, charged with disorderly conduct in his cell at night, and was directed to be punished for the offence, as prescribed by the rules of the institution.   According to the plaintiff's testimony, as stated in the record, "I was taken at seven o'clock in the morning, before the defendants and the two men named Mitchell and Gehr (I think), and was accused of yelling out in the cell during the preceding night.   Mr. Moore told Mitchell and Gehr to take me back an "punish me and beat me."   I protested that I was not guilty of mak-

ing the noise in the night, but Mr. Jesse Moore directed his
subordinates Mitchell and Gehr to take me back and punish
me and beat me.    Mr. Moore then went to his breakfast in
the next room.    He further testified that he was taken in a
room, stripped of his clothing and given five lashes with a
cat-o'-nine tails, each lash made nine welts; that the punish-
ment was administered in a cruel and brutal manner by a man
named Gehr, and that he sustained severe and permament in-
juries from the punishment.

There are other facts contained in the record but these ap-
pear to us all that are material to dispose of the questions
presented in the case.

As to the defendant Cunningham, the record contains no
testimony whatever tending to show that he was present or
was in any way connected with the alleged assault, and we do
not understand that it is seriously contended that there can be
a recovery against him.

The appellant, however, insists that the Court below com-
mitted an error in withdrawing the case from the jury, because
according to the evidence, Moore, the Superintendent, not only
directed the punishment of the plaintiff, but was present aiding
and abetting the assault.    The testimony, however, fails to
support this claim.    Conceding the truth of the whole testi-
mony on the part of the plaintiff, we do not think it was legally
sufficient to entitle the plaintiff to recover.

The plaintiff testified that the punishment was inflicted by a
man named Gehr, and the direction of the Superintendent was
that he should be taken back and punished for a violation of
the rules.    And that after giving the order, the defendant
(Moore) went to his breakfast in an adjoining room.    There
is nothing in the evidence in this case to show, even if it be
admitted that the punishment was inflicted in a willful, mali-
cious and excessive manner, that the defendant (Moore) was
responsible for the wrongful act.

The theory of the appellant's case is that the relation of
master and servant existed between Gehr, and the defendant,
Moore, and not withstanding the fact that the latter did not

direct or witness the alleged assault, being in an adjoining room, he is liable for the tortious acts of his agent. We fail to perceive upon what ground, it can be urged, that the relation of master and servant existed between these persons. But the answer to this contention is that there is nothing in the evidence here tending to show that the defendant either authorized or sanctioned an assault, as charged in the case.

The principle enunciated by our predecessors in the case of *Perry* v. *The House of Refuge*, 63 Md. 21, and relied upon by the appellant has no application to the facts of this case. In that case it was held that the House of Refuge, being a corporation instituted for charitable purposes, cannot be made liable in an action for damages for an assault committed by one of its officers, on one of its inmates, but they must be recovered from the wrong-doer. In this case there is no evidence that an assault was committed by either of the defendants, or was authorized by them, and the Court below committed no error in withdrawing the case from the jury. It is well settled by all the cases that whenever the testimony adduced by the plaintiff is so light and inconclusive that no rational mind can infer from it the fact which it is offered to establish, it is the duty of the Court to withdraw the case from the consideration of the jury.

. Nor do we find any reversible error in the rulings of the. Court embraced in the first, second and third bills of exception. These exceptions were not pressed in the argument of the case and are not alluded to at all in the appellant's brief.

There was no proof of the correctness of the photograph taken of the plaintiff on the day of the alleged assault, and which was offered as evidence on the part of the plaintiff. This constitutes the first exception, and there was no error in the ruling of the Court in sustaining the objection. *Dederichs* v. *Salt Lake City R. R. Co.*, 35 L. R. A. 802, and cases there cited.

The second and third exceptions were taken to the following questions asked the plaintiff on cross-examination: "What were you doing in the House of Correction on September 2nd,

1902, and how long had you been there?" The Court overruled these objections and allowed the questions to be answered, and the witness replied, "I was taken to the House of Correction by a detective on a commitment of a Justice of the Peace, and was there thirty-four days."

It appears that the plaintiff had testified in his examination in chief, that he was in the House of Correction on the 2nd of September, 1902, and had been released after the whipping on a writ of *habeas corpus*. The answers to the questions objected to could not in any way have injured his case. Besides this, they were proper questions on cross-examination.

It follows from what we have said, that the judgment will be affirmed.

*Judgment affirmed with costs.*

(Decided March 23rd, 1904.)