David S. Jaffray, Plaintiff-Appellant, v. Robert Hill, Essex Liquors, Inc., et al., Defendants-Appellees.

Gen. No. 48,845.

First District, Third Division.
May 29, 1963.
Rehearing denied June 19, 1963.

Martin J. McGuire, of Chicago (Robert J. Rafferty, of counsel), for appellant.

Philip G. Brennan, Heineke, Conklin & Schrader, all of Chicago (Paul H. Heineke, and John C. Healy, of counsel), for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff brought suit against defendants Robert Hill and Donald Sealy, charging assault and battery, and against defendant Essex Liquors, Inc. (Essex), under the Dram Shop Act (Ill Rev Stats, c 43, § 135 (1961)). The jury returned a verdict in favor of plaintiff and against the three defendants in the sum of $5500. Each defendant filed a post-trial motion, seeking judgment non obstante veredicto (n.o.v.), or in the alternative, a new trial. The court denied the motion of Donald Sealy for judgment n.o.v. and also denied his motion for a new trial. Sealy has not appealed. The court granted the motions of defendants Essex and Hill for judgment n.o.v., entered judgments accordingly, and denied their alternative motions for new trial. No appeal or cross-appeal has been filed by either defendant from the alternative portion of the final order. The principal issue in the case against Hill is whether his participation was such as to constitute an assault and battery. As to Essex, the principal issue is whether it was the dramshop which sold

the liquor to Hill and if so, whether it was liable for the subsequent conduct of Hill and his companions.

On the afternoon of November 30, 1953, five young men, namely, defendants Hill and Sealy, both eighteen years of age, together with John Miller, James Duble and Paul O'Neill, met at a school store at 75th Street and Constance Avenue in Chicago. Hill had a car. They obtained some whiskey, consumed it, and at about 8:00 or 8:30 p. m., they pooled their money in order to purchase a case of beer. Hill was given the money. He drove with his companions to a liquor store, which he says was the store of defendant Essex. He bought a case of refrigerated quarts of beer, and he drove his companions in his car to Rainbow Beach, located in that general neighborhood, where they consumed the beer and became intoxicated. They then drove aimlessly around the area, and some time after 11:00 p. m., they turned into the street where the South Side Swedish Club was located. Plaintiff, a physician and surgeon, had been at his office until shortly after 11:00 p. m., and then drove to the club to meet his wife, parking his car about fifty feet from the club entrance. Sealy testified he believed they followed the doctor. Hill stopped the car which he was driving. His companions, if not Hill himself (which we will later discuss) alighted from the car, jumped on plaintiff, threw him to the sidewalk, grabbed his left arm, tore off his wristwatch, went through his inner coat pocket, struck him on the head, and inflicted other injuries.

■ From the arguments defendants have made, it would appear that notwithstanding the innumerable cases in which the rule with respect to motions for judgments n.o.v. has been stated, it is still misunderstood, and defendants treat the matter as if they were arguing a motion for a new trial. A motion for judgment n.o.v. presents a single question—whether there

is *any* evidence in the record which, standing alone and taken with all intendments *most favorable to the party resisting the motion,* tends to prove the material elements of his case.

 We will consider first the case against Hill. As to whether he physically participated in the assault, there is the following testimony of plaintiff. " . . . I heard the sound of a car stopping suddenly. I turned about and saw the five young men rushing up toward me. . . . Some one tackled me and I was thrown to the ground. . . . Someone grabbed my left arm and tore off my wrist watch. . . . Somebody had my right arm and somebody was going through my inner pocket. And somebody was at my thighs . . . somebody behind me. . . ." Since the only occupants of the car were Hill and his four companions, this is evidence that Hill physically participated in the assault. On cross-examination plaintiff said he could not state with certainty that there were five. The extent to which this may have affected the weight of his testimony was for the jury. From our examination, it would appear to be the testimony of a man seeking to be scrupulously honest.

Hill contends that there was no evidence that he was engaged in a common purpose or conspiracy or that he aided or abetted his companions or had any intent to injure plaintiff. The evidence is undisputed that Hill drove the car; that he took the money collected for the purpose of buying a case of beer; that he bought the beer for himself and his companions; that together they drank it, became intoxicated and roamed about in his car, and that he drove them to the place where the offense was committed; that he stopped the car to let his companions out to make the attack; and that he waited for them and drove them away. These facts alone give rise to a justifiable inference that the assault upon plaintiff was pursuant

to a common purpose. People v. Thicksten, 14 Ill2d 132, 134, 150 NE2d 813, 815; People v. Rybka, 16 Ill2d 394, 405, 158 NE2d 17, 22. Moreover Sealy testified that he thought they followed Jaffray.

■ While mere presence or negative acquiescence is not enough to constitute participation in an assault, circumstances may show that there is a common design. In such cases it is not necessary in order to establish an assault and battery that the person so charged should have had actual contact with the victim. Whatever is done in furtherance of the design is the act of all, and each is guilty of the assault. People v. Rybka, supra; Christensen v. Frankland, 324 Ill App 391, 58 NE2d 289; Blue v. Christ, 4 Ill App 351; Thomas v. Doorley, 346 P2d 491 (Cal, 1959).

■ The remaining point to be considered with respect to Hill is the contention that plaintiff's counsel in his argument to the jury waived an essential element in his case, to-wit: malice. It appears that counsel for Sealy told the jury in substance that if they rendered a judgment against defendant Sealy, ". . . it lies in Dr. Jaffray's hands to send Mr. Sealy to jail unless that judgment is paid. Who benefits if that is done? Does that cure Dr. Jaffray's pain and suffering? . . ." In replying to that argument, plaintiff's attorney said to the jury: ". . . I am sure that when I tell you this, Dr. Jaffray will agree with me. Do not find these boys guilty of malice. Do not. He would not put them in jail, so what is the use of my getting it. Forget it."

The argument made by counsel for Hill is that malice is the gist of an action for assault and battery; that when counsel waived a finding of malice by the jury, he thereby waived his whole case. The point has a semblance of authority growing out of a legal paradox. Malice, it is true, has been held to be the gist of an assault and battery charge, and formerly

465

a judgment in such a case could be made the basis for a body execution. Aversion to imprisonment for debt caused the legislature to establish as a condition for such an execution, a *special finding* by the jury that malice is the gist of the action. Ill Rev Stats, c 77, § 5 (1961). What plaintiff's counsel was doing was explaining to the jury that their sympathy should not be engaged by counsel's argument that his client would be sent to jail if the jury found against him, because he did not expect to ask for a special finding of malice. He did not so ask. We think the argument was an appropriate answer to the argument of defendants' counsel. The court erred in entering a judgment n.o.v. with respect to Hill, and it properly entered an alternative order denying Hill a new trial.

█ We will next consider whether plaintiff made a case against Essex. In our consideration of the case against Hill, we found that Hill, a minor, bought intoxicating liquor; that he was intoxicated; and that he was a direct and active participant in the assault which resulted in injury to plaintiff. This leaves but one point made by Essex which requires consideration, that is, whether there was evidence to support a finding that the liquor was purchased from it. Evidence for plaintiff on this point consists of the testimony of Hill and Sealy, under Section 60 of the Civil Practice Act (Ill Rev Stats, c 110, § 60 (1961)). It must be borne in mind that they were defendants. Sealy testified: "We . . . pooled our money and got some beer. . . . The five boys . . . just pooled our money [and bought] a case of beer . . . at *Shore* Liquors [which plaintiff maintains was the former name of Essex]. Yes, I think that would be Essex Liquors." Jack Dwortz, an engineer who described himself as the "registerer" of Essex Liquors, testified that "it is not the Shore Liquors. It is Essex Liquors." He did not testify as to the name which was used *at the time of the occur-*

*rence* in question, November 30, 1953. He testified that the liquor store was on the southeast corner of 75th street and Essex Avenue. Hill testified that he purchased the beer at a liquor store on the southeast corner of 75th Street and Essex Avenue, and that it was called "Essex Liquor Store."

■ Counsel for Essex argues that Hill and Sealy both identified the place where the liquor was purchased as Shore Liquors, and that they did not definitely identify it as Essex Liquors; that they discredited their story by referring at times to the store being located at 75th and Phillips, at 76th and Kingston, at 75th and Essex, and at 76th and Essex, as a half block from the Shore Theater, and as two doors away. Both Hill and Sealy identified the store as Essex Liquors. Their confusion as to its address, as distinguished from its location, was apparently due to their inability to remember the street names. In plaintiff's complaint he charged that defendant Essex operated a liquor store at 2501 East 75th Street and that it operated the business under the name of Shore Liquors. In its answer, Essex admitted that it operated a duly licensed liquor store at 2501 East 75th Street. It *did not deny* that on November 30, 1953 it operated under the name of Shore Liquors. This constitutes an admission that it did. There was ample evidence to support the verdict of the jury.

The judgment is reversed and the cause is remanded with directions to deny the motion for judgment n.o.v. and to enter an unqualified order denying the motion for new trial, and to enter judgment on the verdict in favor of plaintiff.

Judgment reversed and cause remanded with directions.

DEMPSEY, PJ and McCORMICK, J, concur.