# DUKE *v.* FELDMAN

[No. 99, September Term, 1966.]

*Decided February 13, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Earl I. Rosenthal* for appellant.

*Francis N. Iglehart* for appellee.

MARBURY, J., delivered the opinion of the Court.

Albert Duke, appellant, has appealed from a judgment, entered on the granting of a motion for a directed verdict by Judge Lester L. Barrett of the Circuit Court for Baltimore County, in favor of Shirley Feldman, appellee, against whom civil assault had been alleged by appellant.

On June 3, 1963, at about 5:00 p.m., Albert Duke was physically assaulted by Joseph G. Feldman, the husband of appellee, in the rear yard of the Duke home in Baltimore County. The Duke house was located on a dead-end street in the Belle Farms development. Duke had been a sales broker for houses in the Belle Farms development. He had no interest in the development other than as a real estate broker. Mr. Feldman had made a down payment on one of the houses sold by appellant, and he paid, in addition, about $1200 or $1300 for the purchase of extras for the house. The development company, which appellant represented as a broker, became insolvent. The purchasers of

the houses under the Veterans Administration Act were able to get back their down payments, but the Feldmans were unable to recover the money paid for the extras. Duke lost some of the commissions owed him for the houses that he had sold. He had several conversations about the refunding of the down payments with the buyers, including Joseph Feldman. There were some meetings among the buyers.

Appellant testified that a few months prior to the assault, Mr. Feldman telephoned him to request a list of all the people who had bought houses. Because he had been harassed by others, on the advice of counsel, he refused to give out any more information than he already had given. Duke also testified that at the conclusion of the conversation, Mr. Feldman threatened him, telling him that he was going to break appellant's head open. Appellee testified that in the telephone conversation which she had overheard, her husband had only asked for a list of former buyers.

On the day of the assault, a Sunday, Mr. Feldman and appellee drove to the Belle Farms development to see what the new developer had done to the houses. The Feldmans and their three children, who were sitting in the back of the automobile, were dressed in their Sunday clothes. They spent about five minutes viewing a model home in the development. After that they drove in the direction of the home that they had wanted to buy, Mr. Feldman at the wheel, and turned down Arrowhead Road, the dead-end street on which the Duke house was located. During the drive appellee and her husband had not discussed the house that they wanted to buy nor had they talked about the money they had lost. Appellee testified that her husband told her that he wanted to see appellant. Appellee said, "Try to get our money back." Her husband made no reply.

There was some evidence that Mr. Feldman parked the car on the left side of the street between the Duke house and that of a next door neighbor. Mr. Feldman got out of the car and went toward the Duke house. Appellee testified that she was busy with the children, who wanted to get out of the automobile, and that she did not notice if her husband had anything in his hand when he left the automobile or when he returned. Appellant's next door neighbors, who had been sitting on their

back patio, testified that they saw Mr. Feldman approach appellant with a monkey wrench in his hand. They heard Mr. Feldman give a friendly greeting which was returned by appellant, then they saw him strike appellant with the wrench. Duke was in his back yard teaching golf to his son. After the first blow was struck, appellant grabbed Mr. Feldman and they wrestled to the area between the Duke house and the neighbor's. There Mr. Feldman struck another blow and proceeded toward his car with the neighbors and Duke, who had a golf club in his hand, in pursuit.

As he approached the car Mr. Feldman told his wife to drive. He got into the front passenger side, and his wife backed the car into a side street to turn around and drove off. The neighbors who witnessed the assault testified that they thought the motor of the Feldman vehicle was running, since they heard no starting of the engine. Appellee asked her husband what had happened. She testified he told her that he had struck appellant because she had raved so about how nice the model home was which they had visited. When she asked him why he struck appellant, he replied, "I thought I would sock him once before I die." She testified at the trial that she had not witnessed the assault.

Appellant contends that appellee was in a position to see the assault, that she was sufficiently in the presence of the actual assault to be able to render aid and assistance to her husband, and that she drove the "get away" car.

A person may be held liable as a principal for assault and battery if he, by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort. *Martin v. Moore,* 99 Md. 41, 57 Atl. 671; *Sellman v. Wheeler,* 95 Md. 751, 54 Atl. 512. However, a person who was present when an assault or battery was committed is not liable as a participant in the absence of any action on his part amounting to an encouragement of the tortious incident. 6 Am. Jur. 2d, *Assault and Battery,* Section 128, page 108. Cf. *Coleman v. State,* 209 Md. 379, 121 A. 2d 254; *Watson v. State,* 208 Md. 210, 117 A. 2d 549; *Seward v. State,* 208 Md. 341, 118 A. 2d 505. Silent approbation or pleasure in an assault and battery inflicted by another does not make a

person, who has not encouraged or aided the perpetrator, liable in damages therefor. 6 Am. Jur. 2d, *Assault and Battery, supra.*

Appellant has failed to show that the wife in any way encouraged, counseled, aided or abetted her husband. (These terms are defined in *Seward v. State, supra.*) Even if she knew that he had made threats to appellant several months prior to the actual assault, there was nothing to show that she was aware of any design or intent on the part of her husband to carry out those threats when they visited Belle Farms. Without more evidence a jury could not be allowed to speculate that the wife's purpose in visiting Belle Farms was to promote and aid her husband in an assault on appellant. When her husband suddenly announced that he wanted to see appellant, he gave no indication of his purpose. She asked her husband to try to get their money back, but she did not say or intimate that he should assault appellant in order to do so. When her husband left the car and when he returned, she did not notice if he had a wrench in his hand. Witnesses for appellant did not see Feldman leave the automobile, and the wrench was not produced in evidence, nor was its size described.

The Feldman vehicle was parked in the direction of the end of Arrowhead Road. Appellee was caring for her children in the automobile when the assault took place. Even if she saw or was in a position to see the assault, there was nothing she could have done to have prevented it. Assuming she had seen the assault, she was not prepared to get her husband away, for when he returned to the car he had to tell her to drive. She testified that she had to slide over to the driver's side. After her husband got in she backed the automobile into a side street to turn it around and drove off. The mere fact that appellee drove her husband away from the scene after the assault would not make her an aider or abettor without evidence that she assisted, supported, or supplemented her husband's action or that she instigated, advised, or encouraged the commission of the tort. Cf. *Seward v. State, supra.* There was nothing in the evidence which would enable the jury to do more than speculate that her driving her husband away was part of a design to perpetrate the assault. If she did try to get her husband away after

the assault was committed in order to keep him from being injured, that would not make her liable for the assault without evidence that she aided or abetted him in the commission of the assault.

Nor was there sufficient evidence to show that the husband was the agent of appellee. Her mere presence when the tortious act was committed by her husband raises no inference that the act was committed by him as her agent, even though the act had some connection or reference to her estate, when it was not shown that she participated in the act, or encouraged him to do it, and when there is no other evidence of agency. *Carnahan v. Cummings,* 105 Neb. 337, 180 N. W. 558, 12 A.L.R. 1455 (1920). Because the evidence was insufficient to show that appellee promoted, counseled, aided or abetted her husband's act or that he was her agent, the granting by the court of appellee's motion for a directed verdict at the close of all of the evidence is affirmed.

*Judgment affirmed. Costs to be paid by appellant.*