ROBERT SKLAN, Conservator of the Estate of David Sklan, an Incompetent, Plaintiff-Appellant, *v.* CONNELL SMOLLA *et al.*, Defendants-Appellees.

First District (1st Division)    No. 80-1226

Opinion filed April 20, 1981.

Sheldon Belofsky, of Chicago, for appellant.

Jerome H. Torshen, Abigail K. Spreyer, and Garretson & Santora, all of Chicago, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The plaintiff, Robert Sklan, as conservator of the estate of David Sklan, an incompetent, appeals from the entry of a summary judgment in favor of defendants, Connell, Albert P. and Ona Lee Smolla. This action was instituted by the plaintiff for injuries received by David Sklan (hereinafter David) on December 5, 1974, at about 10:30 p.m., when he and his friend Michael Goldman (hereinafter Michael) were beaten by codefendants Leslie Acs and Michael Joyce at a playground on the

northeast side of Chicago where the two boys had gone to play basketball. The plaintiff's second amended complaint[1] asserted various theories of recovery against Acs, Joyce and Smolla and their respective parents. The entry of the summary judgment, however, was confined to the allegations contained in counts V, VI, and VII of the second amended complaint concerning the Smollas.

For the reasons hereinafter stated, we affirm.

The record reveals that on the evening of December 5, 1974, Connell Smolla, age 16, met his friend Don Perry in Chicago where the two visited a game arcade and then a restaurant in the vicinity of Devon and California where some of Don's friends were playing in a band. After the two had been at the restaurant for approximately 45 minutes, Connell decided that he would return home to Winnetka. As he was leaving, Acs and Joyce, two acquaintances of his, asked him for rides to their respective homes. On the way home from the restaurant to Acs' home Acs asked Connell if he could drive by the "Blacktop." As they proceeded past the playground known as the "Blacktop," located at 2315 West Jarvis, they saw David and Michael playing basketball. At this time, Acs asked Connell to pull over so that he could talk to the two boys, and Connell complied. Acs rolled down the window on the passenger side of the car and began yelling at Michael and David. Although there is some dispute in the record as to the exact language used, Acs apparently made inquiries concerning where Michael and David's friends or boys were, whether Michael and David knew anything about a boy from Sullivan High being beaten recently, and whether they wanted Acs to beat them up. Michael and David were somewhere between 10 and 40 feet away from the car at this time and separated from it by a metal link fence. Acs appeared very annoyed during his conversation with Michael and David and suddenly got out of Connell's car, jumped the fence dividing the playground from the street, and began hitting David in the face. When David fell to the ground Acs kicked him in the face and then kneed him in the face. Joyce joined him at the playground and hit Michael several times while restraining him. Neither David nor Michael was known to either Acs or Joyce, and there is no evidence that either of the boys was a member of the Blacktoppers. It is undisputed that during the verbal attack on David and Michael Connell said nothing and that he did not leave the car during the physical attack. After Joyce and Acs returned to the car, Connell left the scene at a great speed and drove the others home. As a result of David's head injuries he suffered brain damage which caused him to

---

[1] Counts II and VI of the plaintiff's first amended complaint were struck with leave to amend. The plaintiff's amended pleadings did not refer to or incorporate the unamended counts of the first amended complaint; however, for the sake of convenience, we will refer to the first amended complaint, as amended by this subsequent pleading, as the second amended complaint.

become a paraplegic and mentally incompetent. Acs was subsequently convicted of aggravated battery and attempt murder.

The plaintiff's second amended complaint alleged two counts of battery against Connell based on his concerted action with Acs and Joyce in either inciting, aiding, or abetting their attack or in acting with them pursuant to a common plan or design. It also sought liability against his parents under the Parental Responsibility Law (Ill. Rev. Stat. 1973, ch. 70, par. 51 *et seq.*) for certain acts of Connell characterized as wilful and malicious. The battery charges arose from Connell's acts of driving Acs and Joyce to the scene of the attack, remaining in or near his automobile during the attack, and in permitting Joyce and Acs to leave the scene in his automobile after the attack. The parental responsibility count also alleged that Connell remained in the car during the attack as a lookout. The Smollas' answer denied most of the plaintiff's allegations pertaining to Connell's behavior on the night in question, although it was admitted that Connell did drive Joyce and Acs to the "Blacktop."

Subsequently the Smollas filed a motion for summary judgment and attached as support excerpts from David Sklan's testimony at Acs' trial, Michael Goldman's testimony at Acs' trial, a statement made by Acs subsequent to the attack, and Connell Smolla's deposition. David Sklan's testimony revealed that he had no memory as to the events of December 5, 1974. Michael Goldman testified that while he and David were shooting baskets, a car pulled up and a boy, later identified as Acs, made several inquiries of him and David as to, "where are your boys, if you see your boys tell them we'll kick the sh— out of them," and "do you want me to kick the sh— out of you." He and David denied any knowledge as to what Acs was talking about and told him that they didn't want any trouble. Michael identified Acs as David's attacker and testified that a second boy had attacked him while a third boy remained in the car. He noted that after the attack the boys returned to the car and it drove away at a very fast speed. In his statement, Acs admitted that he and Joyce had struck David and Michael. He also stated that Connell Smolla drove them to the playground but that Connell didn't say anything to the two boys playing basketball and that only he and Joyce got out of the car and jumped the fence to attack the two boys.

In his deposition Connell Smolla testified that he came into Chicago on December 5, 1974, from Winnetka, where he lived, to see his friend Don Perry. He and Perry first went to an arcade and then to a restaurant on Devon. He didn't have anything alcoholic to drink at the restaurant. When he was leaving, Acs and Joyce asked him if he would give each of them a ride home. He agreed. Acs and Joyce had been sitting at another table at the restaurant and Connell was uncertain as to whether they had anything alcoholic to drink. He did not observe them drinking anything

alcoholic, nor did they consume any alcoholic beverages in his automobile on the way home. Moreover, Connell did not think that Acs or Joyce was under the influence of either alcohol or drugs on that evening. On the way to Acs' home, Acs requested that Connell drive by the "Blacktop," a playground frequented by the Blacktop gang. Acs asked him to pull the car over when he saw two boys playing basketball. Connell pulled over keeping the car lights on and the motor running. Acs said nothing about the two boys possibly being Blacktoppers at this time. Acs began yelling at the two boys from the car. Connell couldn't remember the import of the conversation except for some reference to "where are your friends?" Acs became very provoked during this conversation. Connell assumed this was because Acs' friend Russell had recently been jumped and beaten by a group of Blacktoppers. This was only Connell's assumption based on a rumor that he had heard because Acs hadn't mentioned Russell that evening. Connell was not surprised at Acs' tone during the conversation because Acs never spoke politely and normally used profanities in his language. Neither Acs nor Joyce said anything before they left the car, and Connell said nothing because he didn't want to get involved. He stayed in the car during the attack. Connell was "more or less shocked" by the attack, which lasted only a few minutes at the most, in that neither Joyce nor Acs had told him of any intent on their part to fight with the two boys either when Acs asked him to pull the car over or when Acs and Joyce exited the car. Nor did they ask him to be a lookout, to keep the motor running or to let them know if anyone was coming. During the fight Connell didn't yell at the others because he was too far away from them for them to hear him. When Acs started kicking David, Connell honked his horn because he couldn't stand it anymore, and Acs and Joyce immediately returned to the car. Connell noted that if Acs and Joyce hadn't returned to the car, he would have left them. He took them home after the attack.

The plaintiff filed no counteraffidavit in opposition to the motion for summary judgment. After reviewing the pleadings and the supporting documents the trial court granted summary judgment for the Smollas on March 24, 1980, and determined that there was no just reason for delaying enforcement or appeal. The plaintiff filed a timely notice of appeal.

It is well established that a summary judgment will only be entered in favor of the moving party where the pleadings, depositions, admissions, and affidavits demonstrate that no genuine issue of fact exists which warrants trying the case. (Ill. Rev. Stat. 1979, ch. 110, par. 57; *Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735; *Lind v. Zekman* (1979), 77 Ill. App. 3d 432, 395 N.E.2d 964.) Moreover, a summary judgment is an extraordinary remedy to be awarded with caution so as not to preempt the right to trial by jury or right to fully present factual bases for a case

where a material factual dispute may exist. (*Kolakowski v. Voris* (1979), 76 Ill. App. 3d 453, 395 N.E.2d 6; *Riley v. Singer* (1979), 75 Ill. App. 3d 1036, 394 N.E.2d 746; *Bard v. Harvey* (1979), 74 Ill. App. 3d 16, 392 N.E.2d 371.) If fair-minded persons could draw different inferences from the facts, triable issues exist and a motion for summary judgment must be denied. (*Riley v. Singer; Sielski v. Tioga Homes, Inc.* (1978), 62 Ill. App. 3d 340, 379 N.E.2d 336.) It is only when the undisputed facts are susceptible of but a single inference that the issue becomes one of law. (*Riley v. Singer.*) Moreover, the right to summary judgment must be clear beyond question, and in making this determination the court must construe the pleadings, depositions, and affidavits most strongly against the moving party and most liberally in favor of the opponent. *Baier v. State Farm Insurance Co.* (1975), 28 Ill. App. 3d 917, 329 N.E.2d 543, *aff'd* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100; *Kolakowski v. Voris; Sielski v. Tioga Homes, Inc.*

An individual may be found liable of civil battery where he has not actually physically come into contact with another but has acted to incite, aid or abet the actual assailant or has acted in furtherance of a common plan or design with the assailant. (*Ously v. Hardin* (1860), 23 Ill. 403; *Jaffray v. Hill* (1963), 41 Ill. App. 2d 460, 191 N.E.2d 399; *Lister v. McKee* (1898), 79 Ill. App. 210; *Blue v. Christ* (1879), 4 Ill. App. 351.) Mere presence when the battery is committed by another, however, is not sufficient to hold one liable for battery even where the bystander mentally approves the attack. (*Jaffray v. Hill; Lister v. McKee; Blue v. Christ;* 3 Ill. L. & Prac., *Assault & Battery* §20 (1953).) However, evidence of presence along with other circumstances may give rise to the inference that an individual acted pursuant to a common design or that he encouraged the tortious acts by some word, sign, gesture or looks and, therefore, incited, aided, or abetted the attack. (Compare *Jaffray v. Hill* with *Duke v. Feldman* (1967), 245 Md. 454, 226 A.2d 345, and *Steinberg v. Goldstein* (1966), 51 Misc. 2d 825, 274 N.Y.S.2d 46, *aff'd* (1967), 27 App. Div. 955, 279 N.Y.S.2d 240; see generally 6 Am. Jur. 2d *Assault and Battery* §128 (1963).) As such, a person held liable under the theory that he acted in concert with another is one who in some way commands, authorizes, justifies or approves the battery.

The plaintiff alleges that the trial court improperly granted the Smollas' motion for summary judgment because the facts established by the pleadings and supporting documents, while unrefuted, give rise to different inferences and, as such, triable issues exist which must be determined by the trier of fact. It is the plaintiff's position that Connell's compliance with Acs' request to drive by the "Blacktop" evidenced his intent to become part of a common design or plan, apparently for the purpose of revenging a recent beating suffered by a friend of Acs. The

plaintiff reaches this conclusion based on Connell's knowledge that Acs was aggravated by the alleged beating of his friend by the Blacktoppers; the "Blacktop" was the "hangout" of the Blacktoppers; and Acs possessed an aggressive and hostile temperament.

Initially, we note that, in his pleadings, the plaintiff sought to establish the concerted action of Connell based either on the theory that he incited, aided or abetted Acs' attack on David Sklan or that he acted pursuant to a common plan or design. However, in this appeal the plaintiff confines his argument solely to the theory that the summary judgment was improper because the facts in evidence raise an inference that Connell participated in the common plan or design to commit the tortious acts at issue. Consequently, we must only determine whether the unrefuted facts established in the record give rise to the inference that Connell acted pursuant to a common plan or design such as to require the trial of this cause to determine Connell's liability.

While the record does support the fact that Connell was aware that the "Blacktop" was the "hangout" of the Blacktopper gang, there is no evidence to support the plaintiff's argument that Connell knew that Acs was aggravated on the night in question prior to his conversation with Michael and David at the playground. In his deposition, Connell stated that on the night of December 5, 1974, Acs did not mention the Blacktopper gang or the fact that his friend had recently been beaten by the gang. Connell did state, however, that once he saw how aggravated Acs appeared while talking to the two boys at the playground he assumed that Acs was upset because his friend had been beaten. He reached this conclusion based on the fact that he had heard a rumor about the beating, not based on anything Acs or Joyce had told him. Nor is there evidence that Connell was aware, as plaintiff asserts, of Acs' "aggressive and hostile temperament." The only testimony going to this issue was Connell's deposition testimony that Acs always spoke in a rough manner and frequently used profanity. It is uncertain from the record how well Connell knew either Acs or Joyce although he did testify that he knew Acs' home address which suggests some degree of familiarity. Even if Connell was aware of Acs' temperament, we do not believe that this fact alone raises the inference that he joined in any plan or design for revenge developed by Acs or Joyce by driving to the "Blacktop." At most we believe these facts give rise to the inference that Connell's agreement to drive by the "Blacktop" indicated his agreement to see where this particular gang "hung out." There was no way that Connell could foresee the events which would occur or agree to become a part of them from the knowledge that he possessed.

■■ Nor do we believe that Connell's actions at the "Blacktop" evidence any intent on his part to join in any plan or design by Acs and Joyce. The

record reveals that Acs rolled down his window and immediately began shouting at the two boys playing basketball. Then he jumped out of the car without saying a word as did Joyce, who followed him. Connell did not talk to the boys, according to his deposition and Acs' statement. Nor did he join the others at the playground to participate in the attack. While he did drive away after the two returned to the car, the fact that a person transports another from the scene of a battery does not evidence his participation in a common plan or design to commit the battery if there is no evidence that he had been aware of an intent to commit the battery prior to its commission. (*Duke v. Feldman* (1967), 245 Md. 454, 226 A.2d 345; *Steinberg v. Goldstein* (1966), 51 Misc. 2d 825, 274 N.Y.S.2d 46, *aff'd* (1967), 27 App. Div. 955, 279 N.Y.S.2d 240.) There is no evidence in the record that Acs and Joyce intended to seek revenge on the Blacktoppers for the attack at the restaurant prior to meeting Connell, in the car on the way from the restaurant, or even at the "Blacktop" prior to the exact moment Acs chose to strike the first blow at David. As such, it is mere speculation to conclude that Connell joined in any common plan or design aimed at revenge.

The plaintiff's brief contends that "the language which was used the evening of the incident corroborated plaintiff's theory that the occupants of the automobile were embarked upon a common design." We do not believe that the language used by Acs, without more, sufficiently established that Acs had a clear plan or design to attack David and Michael, and that if a plan or design did exist that it was joined in by Connell. While Acs did apparently make some type of threat to the boys, in light of Acs' general practice of talking rough, it is not likely that Connell took the threat to evidence an intent on Acs' part to actually injure the two boys.

■■ Nor do we believe that the fact that Connell chose not to intervene in the attack evidenced his participation. An individual is generally under no duty to protect a party from a third party's criminal attack as evident from the fact that mere presence at the scene of the battery does not import liability. (*Jaffray v. Hill* (1963), 41 Ill. App. 2d 460, 191 N.E.2d 399; *Lister v. McKee* (1898), 79 Ill. App. 210.) We believe that Connell's deposition testimony that he didn't say anything to Joyce when Joyce got out of the car to join Acs without more does not indicate that he had joined with the others. Moreover, his activity in staying in the automobile during the attack or driving the others home afterwards cannot be construed as part of a common plan or design. This conclusion is supported by Connell's deposition testimony that he honked his car horn to attempt to get the others to stop the attack.

The plaintiff cites *Jaffray v. Hill* as support for its position that the facts in evidence raised the inference that Connell participated in a common plan or design. We believe that *Jaffray* is factually distinguish-

able from the case at hand. There, the defendant spent the evening getting intoxicated with his companions, then drove around aimlessly until they happened upon the plaintiff. Moreover, there was some evidence that the defendant and his companions followed the plaintiff for an unspecified period of time before the attack, and some evidence that the defendant participated with his friends in the actual attack. The court held that under these facts it could be reasonably inferred that the attack was pursuant to a common purpose.

■■ Here, Connell accidentally met Acs and Joyce as he was leaving a restaurant, and he voluntarily agreed to drop them at their respective homes. In accomplishing that end, Connell did comply with Acs' unexplained request to go by the "Blacktop" where the attack occurred. However, there was no evidence that Connell had to go out of his way to get to the "Blacktop." We believe that the instant case more closely resembles the decisions cited by the defendants, which have held that where a person is not aware of the intent on the part of another to commit a battery, then it would be pure speculation to conclude that the act of providing transportation from the scene was pursuant to a plan or design or an act intended to aid or abet the commission of the offense. (*Duke v. Feldman* (1967), 245 Md. 454, 226 A.2d 345; *Steinberg v. Goldstein* (1966), 51 Misc. 2d 825, 274 N.Y.S.2d 46, *aff'd* (1967), 27 App. Div. 955, 279 N.Y.S.2d 240.) As the court noted in *Duke*:

> "The mere fact that appellee drove her husband away from the scene after the assault would not make her an aider or abettor without evidence that she assisted, supported, or supplemented her husband's action or that she instigated, advised, or encouraged the commission of the tort * * *. There was nothing in the evidence which would enable the jury to do more than speculate that her driving her husband away was part of a design to perpetrate the assault." (245 Md. 454, 458, 226 A.2d 345, 348.)

While the defendant relies upon decisions reached by foreign jurisdictions, the decisions appear to comport with the position taken by Illinois courts. Accordingly, we believe the trial court properly determined that the evidence along with all reasonable inferences does not support a finding of liability for Connell based on the conduct of Joyce or Acs.

In finding that the summary judgment was properly entered in favor of Connell, we believe that this requires a finding that the trial court also acted properly in granting summary judgment for Connell's parents. Count VII of the second amended complaint alleging the elder Smollas' liability was a derivative action on which their liability was dependent upon a finding by the court that Connell had committed certain wilful or malicious acts for which he could be held liable for David's injuries. As no such liability was found, no liability could inure to his parents.

For the foregoing reasons the order of the circuit court of Cook County granting summary judgment to defendants Connell, Albert P., and Ona Lee Smolla will be affirmed.

Judgment affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.