**Michael J. STEWART, Plaintiff,**

v.

**Kary ROE, in his individual capacity and in his official capacity as a police officer for the City of Aurora; Robin Trettenero, in her individual capacity and in her official capacity as a police officer for the City of Aurora; David Pierce, in his individual capacity and in his official capacity as Mayor of the City of Aurora; and The City of Aurora, a municipal corporation, Defendants.**

**No. 91 C 1991.**

United States District Court, N.D. Illinois, E.D.

Nov. 1, 1991.

William A. Delaney, II, Lindner, Speers & Reuland, P.C., Aurora, Ill., for plaintiff.

Bernard K. Weiler, Mickey, Wilson, Weiler & Renzi, P.C., Aurora, Ill., for defendant Roe.

J. Robert Murphy, Murphy & Murphy, P.C., Aurora, Ill., for defendant Trettenero.

## ORDER

BUA, District Judge.

Plaintiff Michael Stewart has brought suit against Aurora police officers Kary Roe and Robin Trettenero; the Mayor of Aurora, David Pierce; and the City of Aurora claiming that they engaged in or sanctioned conduct that deprived him of his constitutional rights in violation of 42 U.S.C. § 1983.

Plaintiff's suit is based upon allegations of excessive force used by police officers of the Aurora police department. Specifically, plaintiff alleges that on April 4, 1990, he was arrested and taken to the booking area of the Aurora Police Department. While in a holding cell, defendant Roe supposedly attacked plaintiff, threw him to the floor, and repeatedly kicked plaintiff about the face and body while he was laying on the floor. Plaintiff Stewart also alleges that defendant Trettenero struck him and/or assisted defendant Roe in holding him down

as defendant Roe attacked him, or that defendant Trettenero failed to intervene to prevent defendant Roe from administering the beating. Plaintiff alleges that the Mayor of Aurora and the City of Aurora permitted this pattern of police brutality which caused a violation of plaintiff's constitutional rights. As a result of defendants' actions, plaintiff claims that he suffered physical injury, mental anguish and economic loss.

Defendants Roe and Trettenero have responded with motions to dismiss Counts One, Two, Three, Six, Seven and Eight of plaintiff's complaint. For the reasons stated below, the court denies their motions.

### I. Count One

Defendant Roe seeks to dismiss Count One for a number of reasons. First, Roe claims that the count has not been pled with enough specificity to put him on notice. The court disagrees. Count One, as pled, states the time, the place, the participants and, briefly, a description of the events which unfolded. The count also sets forth a constitutional basis for the 42 U.S.C. § 1983 claim. Therefore, the court finds that Count One has been sufficiently pled.

■ In addition, Roe questions whether plaintiff has alleged a proper constitutional basis to bring an excessive force claim under Section 1983. In analyzing an excessive force claim brought under Section 1983, a court must first identify the specific constitutional right allegedly infringed and then judge the validity of the claim by reference to the constitutional standard which governs that right. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). To identify the proper constitutional right and standard, a court looks to when the excessive force was allegedly exerted and what the plaintiff's status was at that time. *Edwards v. May*, 718 F.Supp. 1379, 1382 (N.D.Ill.1989).

Here, plaintiff Stewart had been arrested and taken to the police station. At the time of the alleged contact, he was in a holding cell at the Aurora Police Department. For all appearances, then, he was a pretrial detainee. Determining which standard applies in his case, though, is a bit more difficult.

■ Generally, claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen trigger the protections of the Fourth Amendment and must be judged under the reasonableness standard.[1] *Graham*, 109 S.Ct. at 1871 (1989); *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir.1987) (Fourth Amendment standard governs all excessive force in arrest claims); *Titran v. Ackman*, 893 F.2d 145, 147 (7th Cir.1990) ("Force during arrest must be reasonable within the meaning of the Fourth Amendment.").

It has not been determined, though, whether the Fourth Amendment continues to protect individuals against the use of excessive force beyond the point at which the arrest ends and pretrial detention begins. Thus far, the Supreme Court has only recognized that "the Due Process Clause clearly protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham*, 109 S.Ct. at 1871 n. 10 (citing *Bell v. Wolfish*, 441 U.S. 520, 535–539, 99 S.Ct. 1861, 1872–74, 60 L.Ed.2d 447 (1979)).

The Seventh Circuit has sent mixed signals on the issue. In *Wilkins v. May*, 872 F.2d 190 (7th Cir.1989), *cert. denied*, 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990), the court held that, after police complete an initial seizure, subsequent use of excessive force is not governed by the Fourth Amendment, but is instead a deprivation of liberty governed by the Due Process Clause. *Id.* at 194–195. As a consequence, plaintiff was required to "show misconduct that a reasonable person would find so beyond the norm of proper police procedure as to shock the conscience, and that is calculated to induce not merely monetary fear or anxiety, but severe mental suffering, in the plaintiff." *Id.* at 195.

---

1. The Fourth Amendment guarantees citizens the right "to be secure in their persons ... against unreasonable seizures...." U.S. Const. amend. IV.

However, *Wilkins* was followed by *Titran v. Ackman*, 893 F.2d 145 (7th Cir. 1990), a case which involved facts very similar to those before the court. In *Titran*, plaintiff had been brought into the county jail, booked, and was in the process of being put into a cell. The court found that "although [plaintiff] had not been placed in a cell at the time of the events in question, her presence in the jail and the completion of the booking marked the line between 'arrest' and 'detention.'" *Id.* at 147. Since plaintiff was in pretrial detention, the court emphasized that plaintiff could not be subject to punishment. And, in considering what constitutes punishment, the court stated that "[m]ost of the time the propriety of using force on a person in custody pending trial will track the Fourth Amendment: the court must ask whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them." *Id.*

In this case, plaintiff was in a holding cell when the alleged use of force occurred. Plaintiff Stewart's position, then, was similar to that of the plaintiff in *Titran*. This court, therefore, will engage in an analysis similar to that of *Titran:* did Roe behave in a reasonable manner in light of the circumstances? Because this is a motion to dismiss, the court must accept all well-pleaded allegations as true. As pled, it is conceivable that conduct may have occurred that was not reasonable in light of the circumstances. Indeed, "[i]f the officers intentionally restrained, jolted, and roughed up [Stewart] without physical provocation from [him], their behavior [would be] unreasonable." *Titran*, 893 F.2d at 148. Thus, the court finds that a constitutional basis has been alleged in this case as well as sufficient factual support to state a § 1983 claim. Count One stands.

## II. Counts Two and Three

Defendant Trettenero challenges Counts Two and Three. First, Trettenero claims that the two counts are inconsistent and, thus, should be dismissed. However, Fed. R.Civ.P. 8(e) allows for alternate pleading. In fact, Rule 8(e) provides that "[a] party may ... state as many separate claims ...

as the party has regardless of consistency...." This ground is rejected.

Trettenero then takes a jab at the substance of the claim. She contends that neither Count Two nor Three states a § 1983 claim. With respect to Count Two, Trettenero raises substantially the same argument as Roe made with respect to Count One. For the same reasons, the court finds that Count Two rests on a sufficient constitutional basis. And, under the same reasonableness analysis, the court finds that plaintiff has pled facts which may support an excessive force claim under Section 1983. Therefore, Trettenaro's challenge to Count Two is rejected.

■ Count Three, as well, states a Section 1983 claim. In Count Three, plaintiff Stewart alleges that Trettenero had a clear view of the beating and owed plaintiff a duty to intercede and prevent the actions of her fellow officer. Contrary to Trettenero's contention, case law clearly establishes that "one who is given a badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir.1972) (police officers may be liable for failing to protect plaintiff from beating at the hands of other officers); *Archie v. City of Racine*, 826 F.2d 480, 491 (7th Cir.) (collecting cases), *reh'g granted*, 831 F.2d 152 (7th Cir. (1987). This duty applies to non-supervisory officers as well as supervisory officers. Thus, Stewart can rightly plead a § 1983 violation on this basis.

Regardless, Trettenero contends that her actions should be shielded by the doctrine of qualified immunity. In the present posture of this case, that argument is premature. The court, therefore, declines to rule on the immunity issue.

## III. Count Six

■ Count Six is the subject of an attack by defendant Roe. He argues that the court is without jurisdiction to hear this

state law claim. However, since this court has determined that Counts One, Two and Three properly state a claim under § 1983, the court has supplemental jurisdiction over all other claims which form part of the same case or controversy. 28 U.S.C. § 1367. Clearly, Stewart's battery claim arose from the same controversy as that pled in the § 1983 claims. Therefore, the court has supplemental jurisdiction over Count Six. Defendant Roe's motion is rejected.

## IV. Counts Seven and Eight

Defendant Trettenero, too, questions the court's jurisdiction over the state law counts brought against her. The court also has jurisdiction over these counts, Counts Seven and Eight, by virtue of supplemental jurisdiction.

With Count Eight, Trettenero takes her argument one step further. She contends that the allegations in Count Eight do not constitute an actionable battery claim under Illinois law. Count Eight, though, is not pled as a battery count. It is Count Seven which is set out as the battery count. And, the court finds that count to be sufficient.

■ Under Illinois state law, "[p]laintiff must either establish that [Trettenero] made physical contact or that [Trettenero] somehow incited, aided, abetted, or acted in furtherance of a common plan to make physical contact in order to bring a battery claim against [her]." *Carreon v. Baumann*, 747 F.Supp. 1290, 1291 (N.D.Ill. 1990); *Sklan v. Smolla*, 95 Ill.App.3d 658, 51 Ill.Dec. 161, 164, 420 N.E.2d 575, 578 (1981). Here, plaintiff Stewart claims that Trettenero struck plaintiff and/or assisted co-defendant, Kary Roe, in holding down plaintiff. (Amended Counts at 3.) These allegations claim physical contact and, thus, are sufficient to state a battery claim.

## V. Punitive Damages

■ Lastly, defendant Roe challenges plaintiff's request for punitive damages. He contends that any award of punitive damages levelled against him would be punishment for conduct that has already

been punished. Essentially, Roe is arguing that he would be unlawfully subject to double jeopardy.

Roe's argument is not as off-base as plaintiff suggests. Recently, in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Court held that the government may not, under the Double Jeopardy Clause, subject a defendant who has already been punished criminally to an "additional civil sanction to the extent that the second sanction may not be fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* 109 S.Ct. at 1902. The court even went so far as to mention that "punitive damages available in civil cases, serve punitive goals." *Id.* at 1901 n. 8. Unfortunately for defendant Roe, the Court limited its prohibition to the government. The Court explicitly held that "nothing in today's opinion precludes a private party from filing a civil suit seeking damages for conduct that was the subject of criminal prosecution and punishment. The protections of the Double Jeopardy Clause are not triggered by litigation between private parties." *Id.* at 1903. While defendant Roe was initially punished for his actions against Stewart in a criminal proceeding, this dispute clearly involves litigation between private parties. Thus, under *Halper*, defendant Roe's double jeopardy argument is rejected.

■ Defendant Roe also claims that any punitive damage award should be barred by res judicata. The doctrine of res judicata only provides for preclusion where a party seeks to litigate the same cause of action that has been decided in a previous suit. Since the previous suit here was a criminal prosecution and the present suit is a civil § 1983 proceeding, res judicata is not applicable. *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 n. 1 (9th Cir. 1980). This argument, too, is rejected.

## CONCLUSION

Thus ends this round of arguments. The court does not doubt that more will be raised in the future. But for now, defendant Roe's and Trettenero's motions to dis-

miss (except for the immunity issue which will be addressed at a later time) are denied.

IT IS SO ORDERED.