J-A13009-16

2016 PA Super 217

| | | |
|---|---|---|
| ROBERT E. GRIMM, II, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| ALTHA EUGENE GRIMM, A/K/A EUGENE GRIMM, AND EVA M. GRIMM, HIS WIFE, A/K/A EVA M. THOMPSON AND VINCENT J. ROSKOVENSKY, II, INDIVIDUALLY AND D/B/A/ VINCENT J. ROSKOVENSKY, II, ATTORNEY AT LAW, | | |
| Appellees | | No. 915 WDA 2015 |

Appeal from the Judgment Entered May 11, 2015
In the Court of Common Pleas of Fayette County
Civil Division at No(s): 1432 of 2007, G.D.

BEFORE:  OLSON, STABILE AND MUSMANNO, JJ.:

OPINION BY OLSON, J.:                    **FILED SEPTEMBER 28, 2016**

Appellant, Robert E. Grimm II ("Grandson"), appeals from the judgment entered on May 11, 2015.  In this case, we consider whether a trial court possesses subject matter jurisdiction over claims pending against a defendant when the defendant in an action dies during the litigation and no personal representative is substituted in his or her place.  After careful consideration, we hold that the death of a party deprives the trial court of subject matter jurisdiction over litigation by or against the deceased until such time as the deceased's personal representative is substituted in his or her place.  We therefore vacate the trial court's judgment of *non pros* as to Altha Eugene Grimm ("Grandfather").  We conclude, however, that the trial

court properly sustained preliminary objections filed by the other defendants and therefore affirm those determinations.

The factual background of this case is as follows.[1] During 2005, Grandfather's family noticed a decrease in his mental capacity. On September 26, 2005, they contacted Adult Protective Services ("APS"). After APS evaluated Grandfather, he was involuntarily committed to a mental health facility on September 30, 2005. While committed, Grandfather's then-girlfriend, Eva M. Grimm ("Grandmother") held herself out as Grandfather's wife.[2] Based upon Grandmother's representations to the mental health facility, Grandfather was released into her care. Grandmother encouraged Grandfather to act violently towards other family members and refused to help Grandfather with his mental health treatment.

During subsequent competency proceedings, Vincent J. Roskovensky, II ("Attorney Roskovensky") represented Grandfather. On June 7, 2006, Grandfather went to Grandson's home and began yelling at Grandson. When Grandson told Grandfather to leave the premises, Grandfather struck Grandson in the face with a shovel handle. According to Grandson,

---

[1] As the only claims we address on the merits were disposed of on preliminary objections, we accept as true all well-pled factual allegations set forth in Grandson's amended complaint. *See Estate of Gentry v. Diamond Rock Hill Realty, LLC*, 111 A.3d 194, 198 (Pa. Super. 2015) (citation omitted).

[2] Although Grandfather and Grandmother eventually married, they were not married at the time Grandfather was committed to the mental health facility.

Grandfather stated that Attorney Roskovensky told him that he could do anything he wanted because he was 70 years old.

The relevant procedural history of this case is as follows. Grandson commenced the instant action on May 31, 2007 by filing a praecipe for writs of summons directed to Grandmother, Attorney Roskovensky, and Grandfather. The docket entries reveal that, other than completing service of process on the defendants and the filing of a certificate of merit as to Attorney Roskovensky, no other actions were taken in this case until July 28, 2009 when the trial court issued notice of its intent to terminate the case pursuant to Pennsylvania Rule of Civil Procedure 230.2 (relating to the termination of inactive cases). In response, on September 21, 2009, Grandson filed a notice of intent to proceed. On February 7, 2011, Grandson filed his complaint. On March 24, 2011, Grandson filed an amended complaint. In mid-April 2011, Grandmother and Attorney Roskovensky filed preliminary objections in the nature of demurrers. On October 6, 2011, the trial court sustained Grandmother and Attorney Roskovensky's preliminary objections and dismissed Grandson's claims against those two defendants. Grandson requested that the trial court certify the October 6 order as a final order pursuant to Pennsylvania Rule of Appellate Procedure 341(c); however, the trial court denied that request.

We take judicial notice that on or about May 16, 2013, Grandfather died. *See Goff v. Armbrecht Motor Truck Sales, Inc.*, 426 A.2d 628,

630 n.4 (Pa. Super. 1980) (this Court may take judicial notice); *cf.* Pa.R.Evid. 201(b)(2), (c)(1) (a court may *sua sponte* take judicial notice of a fact which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). No notice of death was filed and no personal representative was thereafter substituted as a defendant in Grandson's lawsuit against Grandfather. On December 4, 2013, the trial court issued notice of its intent to terminate the remaining case against Grandfather pursuant to Pennsylvania Rule of Civil Procedure 230.2. In response, Grandson filed a notice of intent to proceed on February 6, 2014. Thereafter, the trial court scheduled a status conference. At the conclusion of that status conference on February 19, 2015, the trial court ordered that the case be placed on the first available arbitration list after July 1, 2015. On March 23, 2015, Grandfather's counsel filed a motion seeking a judgment of *non pros*. On May 11, 2015, the trial court granted the motion and entered a judgment of *non pros* as to the claims asserted against Grandfather. This appeal followed.[3]

Grandson presents seven issues for our review:

1. Whether failure [by Grandfather's counsel] to file with the [trial c]ourt a [n]otice of [d]eath of a [p]arty or a [s]ubstitution of [p]ersonal [r]epresentative as required by [Pennsylvania Rule of

---

[3] On June 11, 2015, the trial court ordered Grandson to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On July 1, 2015, Grandson filed his concise statement. On July 27, 2015, the trial court issued its Rule 1925(a) opinion. All issues raised on appeal were included in Grandson's concise statement.

Civil Procedure] 2355 prohibits the entry of a [judgment of *n]on [p]ros* for delay in the prosecution of this matter?

2. Whether [Grandfather's death] . . . constitute[d] actual prejudice [that justified the trial court granting a judgment of *non pros* as to Grandson's claims against Grandfather because of the] delay in the prosecution of this matter?

3. Whether an immediate family member of a mentally ill relative who commits a violent assault upon the family member has a cause of action for professional negligence against the attorney who represented the mentally ill relative in his competency hearings, had actual knowledge of his mentally ill client's propensity for violence, intentionally interfered with the mentally ill client's mental health treatment, made misrepresentations to the [court] relative to [the] mentally ill client's mental health evaluations, and actively encouraged the mentally ill client to act out against his family members?

4. Does the Restatement of Torts (Second), Section [876], apply to the facts of this case where an attorney representing a mentally ill client with a history of violent acts provide[d] encouragement to his mentally ill client to engage in violent acts, and otherwise [interfered] with his client's mental health treatment?

5. Did [Grandson] state sufficient facts to plead a cause of action for concerted tort action [against Attorney Roskovensky]?

6. Did [Grandson] state sufficient facts to plead a cause of action for concerted tort action [against Grandmother]?

7. Whether the outrageous acts of [Grandfather, Grandmother, and Attorney Roskovensky] as stated in [Grandson's] complaint state a cause of action for exemplary and punitive damages?

Grandson's Brief at 6-7 (internal quotation marks omitted).[4]

In his first and second issues, Grandson contends that the trial court erred by granting a motion for *non pros* as to claims asserted against

---

[4] We have re-numbered the issues for ease of disposition.

Grandfather. Prior to addressing these issues, however, we *sua sponte* consider whether the trial court possessed subject matter jurisdiction over the motion for *non pros*. **See Turner Const. v. Plumbers Local 690**, 130 A.3d 47, 63 (Pa. Super. 2015) ("[W]e can raise the issue of jurisdiction *sua sponte*[.]"). "It is hornbook law that as a pure question of law, the standard of review in determining whether a trial court has subject matter jurisdiction is *de novo* and the scope of review is plenary." **S.K.C. v. J.L.C.**, 94 A.3d 402, 406 (Pa. Super. 2014) (internal alteration, quotation marks, and citation omitted).

In order to understand this issue, it is necessary to examine the difference between standing, personal jurisdiction, subject matter jurisdiction, and a court's power.

"[T]he doctrine of standing . . . is a prudential, judicially created principle designed to winnow out litigants who have no direct interest in a judicial matter. For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been aggrieved." **Commonwealth, Office of Governor v. Donahue**, 98 A.3d 1223, 1229 (Pa. 2014) (internal quotation marks and citation omitted). In Pennsylvania, "[w]hether a party has standing to maintain an action is not a jurisdictional question." **In re Adoption of Z.S.H.G.**, 34 A.3d 1283, 1289 (Pa. Super. 2011) (*per curiam*) (internal quotation marks and citation

omitted).[5] Thus, an issue relating to standing is waivable. *See In re Estate of Brown*, 30 A.3d 1200, 1204 (Pa. Super. 2011) (citation omitted).

Personal jurisdiction is "[a] court's power to bring a person into its adjudicative process[.]" Black's Law Dictionary (10th ed. 2014). Moreover, "personal jurisdiction is readily waivable." *In re Estate of Albright*, 545 A.2d 896, 902 (Pa. Super. 1988), *appeal denied*, 559 A.2d 33 (Pa. 1989); *see also Fletcher-Harlee Corp. v. Szymanski*, 936 A.2d 87, 103 (Pa. Super. 2007), *appeal denied*, 956 A.2d 435 (Pa. 2008) (issue relating to personal jurisdiction waived for failure to comply with applicable rules of court).

Subject matter jurisdiction "relates to the competency of the individual court, administrative body, or other tribunal to determine controversies of the general class to which a particular case belongs." *Green Acres Rehab. & Nursing Ctr. v. Sullivan*, 113 A.3d 1261, 1268 (Pa. Super. 2015) (citation omitted). "[S]ubject matter jurisdiction [is] not susceptible to waiver." *Commonwealth v. Jones*, 929 A.2d 205, 208 (Pa. 2007) (citation omitted).

"[Judicial authority or p]ower, on the other hand, means the ability of a decision-making body to order or effect a certain result." *Michael G. Lutz*

---

[5] In other jurisdictions, standing is a jurisdictional question. *E.g., Nebraska ex rel. Reed v. Nebraska, Game & Parks Comm'n*, 773 N.W.2d 349, 352 (Neb. 2009) (citations omitted); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 110 (1998).

***Lodge No. 5, of Fraternal Order of Police v. City of Philadelphia***, 129
A.3d 1221, 1225 n.4 (Pa. 2015) (citation omitted). A litigant can waive a
challenge to a trial court or administrative body's power to issue an order or
decree. ***See Riedel v. Human Relations Comm'n of City of Reading***,
739 A.2d 121, 124–125 (Pa. 1999).

The distinction between standing, personal jurisdiction, subject matter
jurisdiction, and judicial power is sometimes subtle; however, it is
important. ***See Lutz Lodge No. 5***, 129 A.3d at 1225 n.4. In this case, the
distinction is critical because Grandson did not file a petition to open or
strike the judgment of *non pros*. Instead, he filed the instant appeal within
30 days of the entry of the judgment of *non pros*. Failure to file a petition to
open or strike a judgment of *non pros* operates as an appellate waiver as to
all issues relating to the judgment of *non pros*. ***See Horwath v. DiGrazio***,
2016 WL 3513912, *1 (Pa. Super. June 24, 2016) (citation omitted).[6]
Therefore, if the failure to substitute Grandfather's personal representative
resulted in the loss of standing to file the motion, the trial court losing

---

[6] All of our cases that discuss waiver for failure to file a petition to open or
strike a judgment of *non pros* specify that failure to file such a petition
results in waiver of those claims relating to the judgment of *non pros*. Other
claims, not related to the judgment of *non pros*, are not waived by failure to
file a petition to open or strike a judgment of *non pros*, even when that
judgment disposes of the final claims pending in the litigation. This makes
sense as a party may not want to challenge the judgment of *non pros* but
may instead want to challenge a prior order disposing of other parties.
Thus, we reject Grandmother and Attorney Roskovensky's argument that
Grandson waived his third through seventh issues on appeal for failing to file
a petition to open or strike the judgment of *non pros*.

personal jurisdiction over Grandfather, or the trial court losing power to enter the judgment of *non pros*, then Grandson's failure to file a petition to open or strike the judgment of *non pros* results in Grandson waiving all issues relating to the judgment of *non pros*. If, however, the failure to substitute Grandfather's personal representative resulted in the trial court losing subject matter jurisdiction over the claims pending against Grandfather, then we may *sua sponte* raise the issue as subject matter jurisdiction cannot be waived. ***See Turner Const.***, 130 A.3d at 63.

After careful consideration, we hold that the death of a party deprives the trial court of subject matter jurisdiction over litigation by or against the deceased until such time as the deceased's personal representative is substituted in his or her place. We make this determination primarily based upon the language of the applicable rules of civil procedure and the case law in this Commonwealth addressing the effect of a lawsuit filed by or against a party who dies during the pendency of litigation.

We begin our analysis with the applicable rule of civil procedure. Pennsylvania Rule of Civil Procedure 2355 provides that, "If a named party dies after the commencement of an action, the attorney of record for the deceased party **shall** file a notice of death with the prothonotary. The procedure to substitute the personal representative of the deceased party shall be in accordance with Rule 2352." Pa.R.C.P. 2355(a) (emphasis

added).[7] Thus, under Rules 2352 and 2355, the filing of a notice of death and the substitution of a personal representative is mandatory. When the deceased party is a plaintiff and such substitution fails to occur within one year of the plaintiff's death, the trial court is required to abate the action unless the delay in appointing a personal representative is "reasonably explained." 20 Pa.C.S.A. § 3375.

Although referring only to plaintiffs, section 3375 is in essence a codification of the common law of this Commonwealth which has long recognized that a trial court lacks subject matter jurisdiction over a claim filed against a deceased party. **See Valentin v. Cartegena**, 544 A.2d 1028, 1029 (Pa. Super. 1988) (*per curiam*) (citation omitted) (Suit filed against a deceased individual a "nullity."); **Thompson v. Peck**, 181 A. 597, 598 (Pa. 1935) (Suit filed against a deceased individual "void."); **see also Sandback v. Quigley**, 8 Watts 460, 463 (Pa. 1839) ("[T]he death of the

---

[7] Rule 2352 provides that

> (a) The successor may become a party to a pending action by filing of record a statement of the material facts on which the right to substitution is based.

> (b) If the successor does not voluntarily become a party, the prothonotary, upon praecipe of an adverse party setting forth the material facts shall enter a rule upon the successor to show cause why the successor should not be substituted as a party.

Pa.R.C.P. 2352.

plaintiff put an end to the action, for under no form of writ can the action of dower afterwards be sustained.").  As this Court stated, "A dead man cannot be a party to an action, and any such attempted proceeding is completely void and of no effect."  **Lange v. Burd**, 800 A.2d 336, 341 (Pa. Super. 2002) (citations omitted).

The language that the courts of this Commonwealth have used leads us to conclude that the death of a party divests a court of subject matter jurisdiction over claims brought by or against the deceased party.  Specifically, this Court and our Supreme Court have repeatedly used the terms "null" and "void" when discussing the effect of a filing after a party dies.  **E.g.**, **Lange**, 800 A.2d at 341;  **Thompson** 181 A. at 598, *citing* **Brooks v. Boston & N. St. R. Co.**, 97 N.E. 760 (Mass. 1912).  An action is only null and void for purposes of appellate review if a court lacks subject matter jurisdiction.  If a party lacks standing, or the court lacks personal jurisdiction or power, the issue can be waived and thus *ipso facto* is not null and void if not properly preserved.[8]  Thus, although these past decisions have not explicitly used the term "subject matter jurisdiction" when

---

[8] We recognize that an action can be null and void because of some other defect, *i.e.*, lack of personal jurisdiction or judicial power of the court, if a party properly preserves the issue before the trial court. **See Flynn v. Casa Di Bertacchi Corp.**, 674 A.2d 1099, 1105 (Pa. Super. 1996) (citation omitted).  What we address, however, is the use of the terms "null" and "void" for purposes of appellate review where an issue was not properly presented to the trial court.  In those circumstances, an action is only null and void if the trial court lacked subject matter jurisdiction.

discussing why an action by or against a deceased party is null and void, it is evident by the use of the terms "null" and "void" that the issue goes to subject matter jurisdiction and not to standing, personal jurisdiction, or a court's power.

We acknowledge that in 1974, this Court reached the opposite conclusion in a non-precedential decision. *See Gilberti v. Payne*, 313 A.2d 264 (Pa. Super. 1974) (*per curiam*) (non-precedential summary affirmance), *appeal dismissed*, 331 A.2d 158 (Pa. 1975). In *Gilberti*, the defendant died after the complaint was filed but prior to the commencement of trial. Counsel filed a suggestion of death but the defendant's personal representative was never substituted in place of the deceased defendant. Eventually, a judgment was entered in favor of the plaintiff and against the deceased defendant. Counsel for the defendant appealed and this Court summarily affirmed without issuing an opinion. *See Gilberti*, 313 A.2d at 264.

Our Supreme Court granted allowance of appeal but subsequently dismissed the appeal as improvidently granted. *See Gilberti*, 331 A.2d at 159. Justice Pomeroy dissented from the dismissal because, in his view, this Court's decision was incorrect and permitting the error to go uncorrected risked perpetuation of the error. Justice Pomeroy's dissent from the dismissal of the appeal is not clear regarding whether he believed that the defendant's death divested the trial court of the power to enter judgment in

favor of the plaintiff or whether he believed that the defendant's death divested the trial court of subject matter jurisdiction over the claim against the deceased.  **Compare Gilberti**, 331 A.2d at 159 (Pomeroy, J. dissenting) (suggesting that the death divested the trial court of subject matter jurisdiction) *with **id.*** at 160 (suggesting that the death divested the trial court of power to enter the judgment).

We conclude that a careful reading of Justice Pomeroy's dissent evidences his belief that the trial court lacked subject matter jurisdiction and that his statement regarding the trial court's power was an instance of confusing subject matter jurisdiction and power.  Specifically, throughout the dissent, Justice Pomeroy discussed why the judgment was null and void.  **Id.** at 159 ("I believe that such a judgment is absolutely null and void[.]"); **see also id.** at 160 n.1 (discussing the fact that the judgment was void).  As discussed in greater detail above, an action is only "null and void" for purposes of appellate review if the trial court lacks subject matter jurisdiction.  Thus, although Justice Pomeroy's dissent used imprecise language, we conclude that he believed that the trial court lacked subject matter jurisdiction to enter a judgment against the decedent in **Gilberti**.

In opining that the trial court lacked subject matter jurisdiction, Justice Pomeroy used the same type of analysis that we conduct above.  Specifically, he relied upon the Pennsylvania Rules of Civil Procedure's mandatory requirement that a personal representative be substituted for a

deceased party. *See Gilberti*, 331 A.2d at 159-160. He also relied upon prior appellate decisions regarding the status of litigation after a party dies. *See id.* at 160. Thus, we believe that our analysis today comports with that of Justice Pomeroy in *Gilberti* which we find persuasive.

For all of these reasons, we conclude that the trial court lacked subject matter jurisdiction over Grandson's claims against Grandfather at the time that it entered the judgment of *non pros* in favor of Grandfather.[9] As we are obliged to raise subject matter jurisdiction *sua sponte*, and a party cannot waive an issue relating to the trial court's lack of subject matter jurisdiction, Grandson's failure to file a petition to open or strike the judgment of *non pros* did not waive the issue for appellate review. As the trial court lacked subject matter jurisdiction over Grandson's claims against Grandfather at the time it entered the judgment of *non pros*, we vacate the judgment of *non pros* and remand this matter to the trial court to either dismiss the

---

[9] We note that courts in other jurisdictions that have considered similar issues have likewise determined that the death of a party divests a court of subject matter jurisdiction over claims brought by or against that party. *See Vapnersh v. Tabak*, 131 A.D.3d 472, 473 (N.Y. App. Div. 2015) (internal quotation marks and citations omitted) ("The death of a party divests the court of jurisdiction and stays the proceedings until a proper substitution has been made pursuant to [New York's equivalent of Rules 2352 and 2355.] Moreover, any determination rendered without such substitution will generally be deemed a nullity."); *Long v. Riggs*, 617 P.2d 1270, 1272 (Kan. App. 1980), *overruled on other grounds*, *Graham v. Herring*, 305 P.3d 585 (Kan. 2013); *Coffin v. Edgington*, 23 P. 80, 80 (Idaho 1890) (citations omitted); *Judson v. Love*, 35 Cal. 463, 467 (1868).

cause of action for want of jurisdiction or to permit substitution of a personal representative in accordance with the Pennsylvania Rules of Civil Procedure.[10]

In his third through sixth issues, Grandson argues that the trial court erred in sustaining preliminary objections filed by Attorney Roskovensky and Grandmother. Prior to addressing the merits of these claims, we first address the trial court's determination that Grandson's notice of appeal was untimely as to these claims. "The question of timeliness of an appeal is jurisdictional. In order to preserve the right to appeal a final order of the trial court, a notice of appeal must be filed within [30] days after the date of entry of that order." *Commonwealth v. Moir*, 766 A.2d 1253, 1254 (Pa. Super. 2000) (internal citations omitted). Although the order sustaining preliminary objections was filed on October 6, 2011, that order was not a final, appealable order because claims against Grandfather remained pending. *See Spuglio v. Cugini*, 818 A.2d 1286, 1287 (Pa. Super. 2003) (*per curiam*) (citation omitted) ("orders [sustaining] preliminary objections and disposing of only some but not all of the underlying parties or claims are interlocutory and unappealable"). Thus, it was not until the entry of the

---

[10] We note that although we are unable to reach the merits of Grandson's first and second issues, we have serious reservations about the propriety of the trial court's action. The motion for *non pros* was filed a mere 32 days after the status conference at which the case was set for arbitration. The record does not reflect a material change during that short timespan which warranted the entry of a judgment of *non pros*.

- 15 -

judgment of *non pros* on May 11, 2015 that the orders sustaining preliminary objections became subject to appellate review. As such, Grandson's notice of appeal was timely filed.

Having determined that we have jurisdiction over the remaining claims, we proceed to the merits.[11] When reviewing an order sustaining preliminary objections, our standard of review is *de novo* and our scope of review is plenary. ***Huss v. Weaver***, 134 A.3d 449, 453 (Pa. Super. 2016) (*en banc*) (citation omitted). "On an appeal from an order sustaining preliminary objections, we accept as true all well-pleaded material facts set forth in the [plaintiff's] complaint and all reasonable inferences which may be drawn from those facts." ***Estate of Gentry v. Diamond Rock Hill Realty, LLC***, 111 A.3d 194, 198 (Pa. Super. 2015) (internal alteration and citation omitted). "Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free

---

[11] Grandmother argues that Grandson's attorney failed to comply with numerous rules of appellate procedure in drafting Grandson's brief. Grandmother urges us to either quash this appeal or dismiss the appeal pursuant to Pennsylvania Rule of Appellate Procedure 2101. Grandmother also notes that this Court previously warned this particular attorney against violating the Pennsylvania Rules of Appellate Procedure. ***See In re Estate of Grimm***, 943 A.2d 328 (Pa. Super. 2007) (unpublished memorandum), at 12-13 n.5.

We agree that Grandson's counsel has once again flaunted numerous rules of appellate procedure. ***E.g.,*** Pa.R.A.P. 124(a)(4), 2116(a), 2135(a)(1), 2154(a). Nonetheless, we decline to quash the appeal, or find waiver. Instead, we condemn counsel's actions and warn that future failures to comply with applicable court rules may result in sanctions against him and/or his client(s).

from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief." **Feingold v. Hendrzak**, 15 A.3d 937, 941 (Pa. Super. 2011) (citation omitted).

In his third issue, Grandson argues that the trial court erred in sustaining Attorney Roskovensky's preliminary objection to his legal malpractice claim. At oral argument, Grandson's counsel conceded that this claim is foreclosed by our Supreme Court's decision in **Guy v. Liederbach**, 459 A.2d 744 (Pa. 1983). In **Guy**, our Supreme Court held that in order to pursue a legal malpractice claim there must be an attorney-client relationship, *i.e.*, privity, between the attorney and the plaintiff. The only exception to the privity requirement is for "a named beneficiary of a will who is also named executrix" where the attorney who drafted the will and directed the plaintiff to witness, which, in turn, caused her entire legacy to be voided and her appointment as executrix to be terminated. **Id.** at 746.

"It is beyond peradventure that [this] Court must follow [our Supreme] Court's mandates, and [this Court] generally lacks the authority to determine that [our Supreme] Court's decisions are no longer controlling." **Walnut St. Associates, Inc. v. Brokerage Concepts, Inc.**, 20 A.3d 468, 480 (Pa. 2011) (citation omitted). As Grandson's counsel conceded at oral argument, **Guy** is still controlling and therefore we may not grant Grandson relief on this third claim of error.

In his fourth and fifth issues, Grandson argues that the trial court erred by sustaining Attorney Roskovensky's preliminary objections to his concerted tortious action claim. Our Supreme Court adopted section 876 of the Restatement (Second) of Torts as the law of this Commonwealth.[12] ***See Skipworth by Williams v. Lead Indus. Ass'n, Inc.***, 690 A.2d 169, 174–175 (Pa. 1997). "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]" ***HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.***, 107 A.3d 114, 120 (Pa. Super. 2014), *quoting* Restatement (Second) of Torts § 876(b).

We conclude that the trial court properly sustained Attorney Roskovensky's preliminary objection in the nature of a demurrer. As the comment to section 876 makes clear, concerted tortious action requires the secondary actor[13] to have knowledge of the primary actor's tortious actions or the primary actor's tortious act must be foreseeable to the secondary

---

[12] Attorney Roskovensky argues that section 876 is inapplicable to most attorney-client interactions. As we conclude that even if section 876 applies to the advice Attorney Roskovensky provided Grandfather, we decline to address this argument. Instead, we assume *arguendo* that section 876 is applicable in this situation.

[13] Commentators have used the term "secondary actor" to refer to the person from whom a plaintiff is seeking to recover under section 876 and the term "primary actor" to refer to the person who commits the underlying tort. ***E.g.***, Christine L. Eid, *Comment: Lawyer Liability for Aiding and Abetting Squeeze-Outs*, 34 Wm. Mitchell L. Rev. 1177 (2008).

actor. *See* Restatement (Second) of Torts § 876 cmt b ("although a person who encourages another to commit a tortious act may be responsible for other acts by the other, ordinarily he is not liable for other acts that, although done in connection with the intended tortious act, were not foreseeable by him"). In this case, that means Grandson was required to plead that Attorney Roskovensky either knew that Grandfather was going to strike Grandson or that Grandfather's striking of Grandson was a reasonable foreseeable consequence of Attorney Roskovensky's statements to Grandfather.

Grandson argues that the facts as pled in his amended complaint, *i.e.*, that Attorney Roskovensky knew that Grandfather was a violent person, counseled Grandfather that he was judgment proof and was immune from prosecution because of his age, and interfered with Grandfather's mental health treatment, state a cause of action under section 876. We disagree. Grandson's complaint fails to plead any facts that show Attorney Roskovensky knew Grandfather would strike Grandson in the face. Furthermore, Grandson's complaint falls woefully short of pleading that Attorney Roskovensky should have known that his counseling of Grandfather would lead to the battery of Grandson.

We find persuasive the Court of Appeals of Maryland's decision in *Duke v. Feldman*, 226 A.2d 345 (Md. 1967). In *Duke*, the primary actor assaulted the plaintiff who attempted to recover against the primary actor's

wife for concerted tortious action.[14]  The court found evidence that: the secondary actor was aware of her husband's previous threats to the victim; the secondary actor requested that the primary actor recover money from the victim; and the secondary actor drove the primary actor from the scene of the assault.

In **Duke**, the court concluded that the primary actor's assault of the victim was not a foreseeable consequence of the secondary actor asking him to recover funds from the victim.  The court relied on the fact that the primary actor did not evidence any design or intent to carry out his threats when he visited the victim to collect the money.  **Id.** at 347-348.  The court reasoned that the secondary actor may have believed that the primary actor was willing to recover the money in a peaceful manner, despite his history of violence towards the victim.  **Id.** at 348.  Moreover, the secondary actor did not see the primary actor with any weapon which could be used to assault the victim.  **Id.**  Therefore, the court held that it would be mere speculation to conclude that the primary actor's assault was foreseeable.

Grandfather's actions were much less foreseeable than the primary actor's conduct in **Duke**.  Grandson avers that Attorney Roskovensky knew of Grandfather's propensity for violence.  In **Duke**, not only did the

---

[14] Although the term concerted tortious action is not used in **Duke**, it is evident that the court was considering such a claim.  **See Halberstam v. Welch**, 705 F.2d 472, 483 (D.C. Cir. 1983) (discussing **Duke** in the context of a section 876 analysis).

secondary actor know of the primary actor's propensity for violence, she knew of his propensity for violence towards the specific victim in the case. In this case, Grandson failed to plead that Attorney Roskovensky knew about Grandfather's propensity of violence towards Grandson – instead Grandson alleged only a general propensity of violence towards family members.[15]  In **Duke**, the secondary actor encouraged the primary actor to recover money from the victim – an action that often leads to violence.  In this case, Grandson failed to plead that Attorney Roskovensky encouraged Grandfather to confront Grandson.  Finally, in **Duke** the secondary actor drove the primary actor from the scene.  In this case, Attorney Roskovensky was not present at the scene of the alleged battery.  Therefore, we conclude that Grandson failed to plead sufficient acts to maintain a section 876 claim against Attorney Roskovensky.  Accordingly, we conclude that the trial court properly sustained Attorney Roskovensky's preliminary objection in the nature of a demurrer as to this count.

In his sixth issue, Grandson argues that the trial court improperly sustained Grandmother's preliminary objection in the nature of a demurrer as to his concerted tortious action claim.  Grandson argues that Grandmother's knowledge of Grandfather's propensity for violence and interference with Grandfather's mental health treatment constituted

---

[15] To the extend Grandson argues that he pled such facts, that argument is waived.  **See** Pa.R.A.P. 2101, 2117(c), 2119(e).

concerted tortious action.[16]  We conclude that this argument is without merit for reasons similar to why we reject these arguments as to Attorney Roskovensky.

Grandson failed to plead that Grandmother knew that Grandfather intended to strike Grandson in the face.  Furthermore, like with Attorney Roskovensky, Grandson's factual allegations fall woefully short of pleading that Grandmother should have known that her actions would lead to Grandfather's battery of Grandson.

We find **Duke** persuasive for the same reasons that we found it persuasive as to Attorney Roskovensky.  **Duke** is more similar to Grandson's claim against Grandmother because, like in **Duke**, Grandson is attempting to impose liability on the spouse of the primary actor.  Like in **Duke**, however, Grandmother cannot be held liable for unforeseeable actions taken by Grandfather towards Grandson.  Accordingly, we conclude that the trial court properly sustained Grandmother's preliminary objection in the nature of a demurrer to Grandson's concerted tortious action claim.

In his final issue, Grandson alleges that the trial court erred by dismissing his claim for punitive damages.  However, "[a] request for punitive damages does not constitute a cause of action in and of itself.

---

[16] Grandson also makes arguments related to direct tortious action by Grandmother, *e.g.*, a direct breach of fiduciary duty.  Concerted tortious action, however, is a claim directed to a secondary actor and not the primary actor.  Thus, we disregard any arguments Grandson makes as to why Grandmother breached her fiduciary duty towards Grandson.

Rather, a request for punitive damages is merely incidental to a cause of action." **McClellan v. Health Maint. Org. of Pennsylvania**, 604 A.2d 1053, 1061 (Pa. Super. 1992), *appeal denied*, 616 A.2d 985 (Pa. 1992) (citation mitted). As the trial court correctly sustained Grandmother's and Attorney Roskovensky's preliminary objections and dismissed all claims against those two defendants, there are no viable underlying claims and Grandson is not entitled to punitive damages as to those two defendants. Whether Grandson is entitled to punitive damages as to Grandfather is not ripe, so we decline to address that question. **See In re Estate of Piet**, 949 A.2d 886, 896 (Pa. Super. 2008), *vacated on other grounds*, 997 A.2d 338 (Pa. 2010) (*per curiam*) (declining to reach issue not ripe for appellate review).

In sum, we hold that the trial court lacked subject matter jurisdiction to enter a judgment of *non pros* in favor of Grandfather.[17] We therefore vacate the trial court's judgment of *non pros* and remand for further proceedings on Grandson's claims against Grandfather. We conclude that

---

[17] We acknowledge that this holding appears to create a perverse incentive for defense counsel to not file a notice of death and to not timely substitute a personal representative in place of a deceased defendant. We note, however, that the Pennsylvania Rules of Civil Procedure provide adequate safeguards against such abuse. If defense counsel is aware of his or her client's death and fails to file a timely notice of death, he or she has breached his or her obligation under Rule 2355 and the trial court may impose appropriate sanctions. If defense counsel fails to timely substitute a personal representative, the plaintiff(s) may use the procedure set forth in Rule 2352(b) to obtain the necessary substitution.

the trial court properly sustained Attorney Roskovensky and Grandmother's preliminary objections. As Grandson's arguments relating to punitive damages against Grandfather are not ripe for disposition, we decline to reach that question.

Judgment affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2016