J-A28041-25 & J-A28042-25

2026 PA Super 16

| IN RE: ESTATE OF DOMINIC J. FORTE, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: JOAN FORTE | : | No. 1701 MDA 2024 |

Appeal from the Order Entered October 16, 2024
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s): 4021-0435

| IN RE: ESTATE OF DOMINIC J. FORTE, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: THOMAS J. FORTE, EXECUTOR OF THE ESTATE OF DECEDENT J. FORTE | : | |
| | : | |
| | : | No. 1641 MDA 2024 |

Appeal from the Order Entered October 16, 2024
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s): 4021-0435

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

OPINION BY LANE, J.:                    **FILED JANUARY 30, 2026**

We address together the appeals of Joan Forte ("Joan") and Thomas J. Forte, Executor ("Thomas") of the Estate ("Estate") of Dominic J. Forte (the "Decedent"), from an order, entered during proceedings to remove Thomas as executor, invalidating a conveyance of an Estate asset made by Thomas to Joan. Joan and Thomas contend that the Orphans' Court lacked jurisdiction over Joan and therefore could not invalidate the conveyance and thus allege noncompliance with 20 Pa.C.S.A. § 764 and Pa.R.O.C.P. 3.5. We hold: (1) this challenge implicates personal, not subject matter, jurisdiction; and (2)

Joan and Thomas waived the claim by failing to raise it before the Orphans' Court. After careful review, we affirm.

These appeals arise from a dispute over the administration of the Estate of the Decedent. The Decedent and his wife, Joan, had three adult children: Thomas, Donna Forte ("Donna"), and Gina Forte ("Gina"). The Decedent died testate in February 2021, leaving a last will and testament that was duly probated. Under the will, the Decedent appointed Thomas to serve as executor. In March 2021, the Register of Wills issued letters testamentary to Thomas.

The Decedent's will directed that: (1) Thomas receive all of Decedent's shares of stock and ownership interest in the Decedent's coal company; and (2) Thomas establish a trust for Joan equal to one-third of the gross value of Decedent's probate estate. Pertinently, the will also directed Thomas to sell the Decedent's residence ("Residence") in Hazleton, Luzerne County, which the Decedent held in his name alone.[1] However, the will granted Joan the right to occupy the Residence for six months after the Decedent's death, with all expenses paid from the Estate. Within a month of the Decedent's death, an appraisal valued the Residence at $290,000.

Finally, the will disposed of the residuary estate as follows: Donna and Gina were each to receive one-fourth of the residuary estate outright, and

---

[1] **See** Appraisal Report, 2/2/21 (naming the Decedent as the sole legal owner of the Residence).

Thomas was to establish separate trusts for each daughter with an additional one-fourth share.

In June 2021, Joan filed a spousal election to take her elective share contrary to the will, entitling her to one-third of the Decedent's gross estate.[2] Additionally, at some point, Thomas and Donna verbally agreed to allow Joan to remain in the Residence beyond the six-month period, provided Joan paid her own expenses, with the Estate continuing to pay major bills, such as taxes. Gina did not agree to Joan's continued occupancy after the six-month period. Nonetheless, Thomas permitted Joan to remain in the Residence while the Estate continued to pay all expenses. In September 2022, Thomas also used $53,106 of the Estate's funds to purchase a car for Joan.

Meanwhile, in 2023 and 2024, the Estate made three distributions to Donna, totaling $174,617.33. It did not make any distributions to Gina, who lived in South Carolina. Furthermore, Thomas did not establish trusts for Donna or Gina.

On August 22, 2024, Donna and Gina filed a petition in the Orphans' Court seeking removal of Thomas as executor for failure to properly administer the Estate. Their petition requested the appointment of a substitute

---

[2] By making a spousal election contrary to the will, Joan also became entitled to a portion of certain *inter vivos* gifts made within one year of the Decedent's death exceeding $3,000. Within that year, the Decedent had given $25,000 to each daughter.

administrator and an accounting of the Estate's assets. It does not appear from the record that Donna and Gina served a copy of this petition on Joan.

On September 5, 2024, the Orphans' Court ordered Thomas to file a response to the petition. The court scheduled an evidentiary hearing for October 16, 2024, and directed the clerk of courts to mail a copy of the order to all counsel of record and any interested parties. It does not appear from the record that the clerk mailed a copy of this scheduling order to Joan.

On September 24, 2024, Thomas filed a counseled answer denying certain allegations. He averred that Joan, as the surviving spouse who has filed a spousal election, remained a beneficiary of the Estate. He admitted that Joan continued to reside in the Residence and that the Estate paid her expenses but asserted that the Estate would deduct those amounts from her now one-third share.

Attached to Thomas' answer was a certificate of service, stating that Thomas served a copy of his answer "*via* electronic mail, and regular U.S. First class mail upon counsel of record for the Petitioners and **counsel of record for Joan** . . . addressed as follows: . . . David L. Glassberg, Esquire[.]" Certificate of Service to Answer in Opposition to Petition of Beneficiaries, 9/24/24.

That same day, Thomas also: (1) executed and recorded a deed conveying the Residence to Joan for $1; (2) without giving notice to Donna or Gina.

The Orphans' Court conducted the evidentiary hearing as scheduled, three weeks later. Joan did not appear at the hearing. Thomas, Donna, and Gina testified. Donna testified that while she initially orally agreed to allow Joan to remain in the Residence, she no longer consented due to safety and financial concerns, as Joan was now ninety years old. Gina testified that she had not agreed to Joan's continued occupancy after the six-month period and that she had received no communication or distribution from the Estate. Both sisters described difficulties communicating with Thomas, including unanswered "phone calls, emails, more begging." *Id*. at 42. Gina further testified, "No one has ever mailed me anything to [my] South Carolina address." *Id*. at 58.

Thomas acknowledged that he: (1) permitted Joan to take an elective share; (2) failed to establish any of the trusts directed by the will; (3) failed to distribute assets in accordance with the will; (4) used $53,106 from the Estate's bank account to purchase a vehicle for Joan; and (5) conveyed the Residence to Joan for $1 instead of selling it as directed by the will. Thomas further testified that Joan made a $37,200.12 payment to the Estate on October 3, 2024, explaining only that it was "for the difference of the house." N.T., 10/16/26, at 16. Thomas also explained he relied on the 2021 appraisal, now three years old, to determine the value of the Residence.

Despite acknowledging the purpose of the hearing — Donna and Gina's petition to remove him as executor for mismanagement of the Estate —

Thomas could not say "how much money [Donna and Gina] were supposed to get versus how much money they [have] received." *Id*. at 32 (Orphans' Court asking whether Donna's total share was $174,000, the amount she has received, and Thomas responding, "As far as I'm — whatever. This law firm told that law firm. Their money is here. Do they want it"). Additionally, Thomas failed to produce bank statements or records showing the status of the Estate's accounts, assets, and distributions. *See id*. at 32.

As stated above, Joan did not appear at the hearing, and we note she raised no objection to an alleged lack of service, notice, or the court's authority at any time during the proceedings. We further observe that neither Donna nor Gina requested the Orphans' Court to invalidate the Estate's conveyance of the Residence to Joan. However, immediately following the hearing, the Orphans' Court entered an order invalidating the deed to Joan and directing title of the Residence to revert to the Estate. On October 23, 2024, the court entered a separate order removing Thomas as the executor. Neither Joan nor Thomas filed a motion for reconsideration.

Joan and Thomas filed separate, timely notices of appeal from the order invalidating the conveyance of the Residence. The Orphans' Court did not

direct them to file a Pa.R.A.P. 1925(b) concise statement. Nevertheless, the

Orphans' Court has issued an Pa.R.A.P. 1925 opinion.[3]

Joan and Thomas present three identical issues for our review:

1. Did the Orphans' Court lack jurisdiction to declare the deed to [Joan] void, where no pleading or other filing was served on [Joan] to request this relief or notify [Joan] that her deed was subject to avoidance?

2. Did the Orphans' Court deprive [Joan] of due process by declaring void a deed to her, without notice, without being joined as a party and without any pleading seeking this relief?

3. Did the Orphans' Court err in declaring void the deed to [Joan], because there was no legal basis to nullify the deed?

Joan's Brief at 6; *see also* Thomas' Brief at unnumbered 4.

Preliminarily, we observe that although Joan and Thomas are

represented by separate counsel, they filed briefs that are virtually identical.[4]

As stated above, Thomas has abandoned any challenge to the order removing

him as executor. With respect to the nullification of the deed he made to Joan,

Thomas does not make any argument that the order aggrieved him. Instead,

Thomas claims, identically to Joan's arguments, that the Orphans' Court

lacked jurisdiction over **Joan** and its order violated **Joan's** due process rights.

**See** Pa.R.A.P. 501 & note (providing that "any party who is aggrieved by an

---

[3] We note Thomas had also filed a notice of appeal from the order removing him from the administration of the Estate, but he subsequently discontinued this appeal. **See** Praecipe for Discontinuance, 1659 MDA 2024, 8/13/25.

[4] Indeed, Thomas' brief refers to Joan, not himself, as the "Appellant."

appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom" and stating that whether a party "a party is aggrieved by the action below is a substantive question determined by the effect of the action on the party, *etc*").

Nevertheless, the order invalidated the conveyance undertaken by Thomas in his capacity as executor, and thus directly affected his asserted interest in the transaction. Accordingly, we determine he has sufficient interest in the outcome to confer appellate standing. **See** Pa.R.A.P. 342(a)(6) (allowing "an appeal [to] be taken as of right from . . . [a]n order determining an interest in real or personal property[]").

As all of Joan's and Thomas' issues are identical, we address them together. Joan and Thomas argue the Orphans' Court "lacked jurisdiction" to "void" the deed conveying the Residence to Joan. Joan's Brief at 14; **see also** Thomas' Brief at unnumbered 19. They first argue that no party requested such relief. In their view, Donna and Gina's petition sought only Thomas' removal as executor, and the Orphans' Court exceeded the permissible scope of that proceeding when it acted *sua sponte* to invalidate the deed.

Joan and Thomas next assert that the Orphans' Court failed to comply with the procedural requirements governing the exercise of jurisdiction over interested parties. They maintain that the court neither issued citation as required by 20 Pa.C.S.A § 764 nor provided the formal notice contemplated by Pa.R.O.C.P. 3.5. According to them, the court deprived Joan of due process

by failing to join her as a party, to serve her with process, or otherwise to afford her a meaningful opportunity to present her position. They characterize Joan as an indispensable party to any proceeding that implicated title to the Residence and insist that the court therefore lacked authority to adjudicate her rights in her absence.

Finally, Joan and Thomas challenge the substantive basis for the Orphans' Court's ruling. They argue that the Probate, Estates and Fiduciaries Code[5] ("PEF Code") does not permit a court to set aside a conveyance simply because of inadequate consideration. They further maintain that none of the narrow, "exceptional circumstances" — fraud, accident, or mistake — that would permit judicial intervention existed in this case. Joan's Brief at 38; **see also** Thomas' Brief at unnumbered 38.

Before addressing the merits of Joan's and Thomas' claims, we must determine whether they have preserved them. We observe:

> This Court may raise the issue of waiver *sua sponte*. The issue of waiver presents a question of law, and, as such, our standard of review is *de novo* and our scope of review is plenary.
>
> In order to preserve a claim on appeal, a party must lodge a timely objection. Failure to raise such objection results in waiver of the underlying issue on appeal. [**See**] Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal")[.]

---

[5] **See** 20 Pa.C.S.A. §§ 101-8816.

*In re Estate of Anderson*, 317 A.3d 997, 1003 (Pa. Super. 2024) (some quotation marks omitted).

We compare the issues of subject matter jurisdiction and personal jurisdiction. This Court has explained:

> "Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. Jurisdiction is a matter of substantive law. 42 Pa.C.S.[A.] § 931(a) (defining the unlimited original jurisdiction of the courts of common pleas)." "The trial court has jurisdiction if it is competent to hear or determine controversies of the general nature of the matter involved *sub judice*. Jurisdiction lies if the court had power to enter upon the inquiry, not whether it might ultimately decide that it could not give relief in the particular case."
>
> > . . . Any issue going to the subject matter jurisdiction of a court . . . to act in a particular matter is an issue the parties cannot waive . . .. In other words, the parties or the court *sua sponte* can raise a challenge to subject matter jurisdiction at any time.

*Roman v. McGuire Memorial*, 127 A.3d 26, 33 (Pa. Super. 2015) (emphasis and some citations omitted).

The Orphans' Court has mandatory jurisdiction over: "(1) [t]he administration and distribution of the real and personal property of decedents' estates[; and (2) t]he administration and distribution of the real and personal property of testamentary trusts[.]" 20 Pa.C.S.A. § 711(1), (2). Additionally, we note that "[b]y motion, a party may request the [Orphans' Court] to reconsider any order that is final[.]" Pa.R.O.C.P. 8.2(a).

Personal jurisdiction, on the other hand, "is [a] court's power to bring a person into its adjudicative process." *Grimm v. Grimm*, 149 A.3d 77, 83 (Pa.

- 10 -

Super. 2016) (citation omitted). "Jurisdiction of the person may be obtained through consent, waiver or proper service of process." **Fleehr v. Mummert**, 857 A.2d 683, 685 (Pa. Super. 2004). A challenge to "personal jurisdiction is readily waivable." **Grimm**, 149 A.3d at 83.

Section 764 of the PEF Code explicitly provides that "[j]urisdiction of the person shall be obtained by citation to be awarded by the [O]rphans' [C]ourt division upon application of any party in interest." 20 Pa.C.S.A. § 764. The citation shall direct the named party to file a complete answer under oath to the averments of a petition to Orphans' Court and to show cause as specified in the court's decree. **See id**.

The Pennsylvania Orphans' Court Rules similarly specify: "When personal jurisdiction is required and has not been previously obtained[,] the petition [to the Orphans' Court] shall include a preliminary decree for the issuance of a citation[.]" Pa.R.O.C.P. 3.5(a)(1). "The citation to obtain personal jurisdiction and a copy of the petition shall be served upon each cited party at least 20 days before the date when a responsive pleading is due," following the rules for service of original process under the Pennsylvania Rules of Civil Procedure. Pa.R.O.C.P. 3.5(a)(2).

We find persuasive value in this Court's recent unpublished decision in **In re Estate of Torrens**, 2025 WL 2622403 (Pa. Super. 2025) (unpublished

memorandum).[6]  In that matter, Torrens filed a petition to revoke the probate

of her estranged spouse's[7] will nearly three years after probate.  *See id*. at

*4.  The executor of the estate filed preliminary objections, asserting Torrens'

petition was time barred by an applicable one-year statute of limitations.  *See

id*. at *4.  The Orphans' Court sustained the objections and dismissed Torrens'

petition with prejudice.  *See id*.

On appeal before this Court, Torrens argued that the Orphans' Court

lacked subject matter jurisdiction to dispose of her petition to revoke because

it failed to issue citations to several beneficiaries of the decedent's will.  *See

id*. at *10.  The Superior Court panel rejected Torrens' characterization of her

claim as sounding in subject matter jurisdiction:

> Although Torrens purports to raise an issue of subject matter
> jurisdiction, she has, in fact, raised an issue of personal
> jurisdiction.  Indeed, section 764 of the [PEF] Code provides, in
> pertinent part that "[j]urisdiction of the person shall be obtained
> by citation to be awarded by the [O]rphans' [C]ourt division upon
> application of any party in interest."  20 Pa.C.S.[A.] § 764.  Thus,
> ***pursuant to section 764, matters relating to the issuance***

---

[6]  *See* Pa.R.A.P. 126(b)(1)-(2) (providing that an unpublished non-precedential memorandum decision of the Superior Court, filed after May 1, 2019, "may be cited for [its] persuasive value").

[7] Torrens and the decedent, who was adjudicated an incapacitated person, had commenced divorce proceedings and reached a property settlement agreement, although the record did not confirm "whether the divorce was ever finalized."  *In re Estate of Torrens*, 2025 WL 2622403 (unpublished memorandum at *2).  After the decedent's will was admitted to probate, Torrens filed a petition to revoke, seeking decrees that both the marital property settlement and his will were legal nullities because the decedent lacked capacity to execute either.  *See id*.

*of citations are issues of personal jurisdiction, not subject matter jurisdiction*. *See id*.

*Id*. at 10 (emphasis added). Instead, the panel construed Torrens' argument — that "the [O]rphans' [C]ourt never issued citations to several beneficiaries" — to be a claim that "the court lacked *personal* jurisdiction to settle claims against those who were not parties to the proceedings." *Id*. at *11 (emphasis added).

Next, the panel recounted that "issues of subject matter jurisdiction [are] non-waivable and can be raised at any time," but a litigant may waive claims of personal jurisdiction. *Id*. at **11-12. The panel then held that because Torrens first raised the citation issue on appeal, she waived the claim under Pa.R.A.P. 302(a). *See id*. at *11.

In the instant appeal, we observe that in objecting to the Orphans' Court alleged lack of "jurisdiction," Joan and Thomas do not argue, specifically, whether the court lacked "personal jurisdiction" or "subject matter jurisdiction."[8] Our review of their discrete arguments reveals a challenge to personal jurisdiction. Their objections concern the Orphans' Court's authority to adjudicate Joan's individual rights in the proceeding. Specifically, they aver that the court's failure to serve Joan with notice under Section 764 of the PEF Code and Orphans' Court Rule 3.5 constituted a jurisdictional defect. Such an

---

[8] While Joan's brief quotes *law* relating to both personal jurisdiction and subject matter jurisdiction, her *argument* does not refer to either type of jurisdiction specifically.

- 13 -

argument challenges the court's ability to exercise power over a party, which is a matter of **personal jurisdiction**, not the court's inherent authority to hear probate matters generally. **See In re Estate of Torrens**, 2025 WL 2622403 (unpublished memorandum at *13).

However, as noted above, Joan did not appear at the October 16, 2024 hearing concerning Thomas' removal as Executor for alleged mismanagement of the Estate, of which she is a beneficiary, and she did not raise any objection to service, notice, or the Orphans' Court's authority at any point during the proceedings. **See** 20 Pa.C.S.A. § 764; **see also** Pa.R.O.C.P. 3.5. Notably, neither Joan nor Thomas acknowledge that Thomas served Joan *via* her counsel with his answer to Donna and Gina's petition to terminate him as executor. Additionally, neither filed a motion for reconsideration of the order invalidating the conveyance of the Residence. **See** Pa.R.O.C.P. 8.2(a).

Instead on appeal, Joan and Thomas now contend for the first time that the Orphans' Court lacked authority to invalidate the deed because the court did not serve Joan with a citation under 20 Pa.C.S.A. § 764. Their argument is unavailing. By failing to raise any objection to service, notice, or personal jurisdiction at the earliest opportunity before the Orphans' Court, they have waived those claims. **See In re Estate of Anderson**, 317 A.3d at 1003; **see also** Pa.R.A.P. 302(a). Joan and Thomas may not now assert that the Orphans' Court lacked authority to invalidate the conveyance of the Residence from the Estate executed by Thomas in his capacity as executor. Accordingly,

they have waived their claims sounding in personal jurisdiction and due process.

In their second issue, Thomas and Joan aver that the Orphans' Court deprived Joan of due process by invalidating the conveyance of the Residence without notice and without any pleading specifically requesting that relief. We recognize that under Section 3182, the Orphans' Court "on its own motion may, and on the petition of any party in interest" take actions necessary to protect estate assets when an executor "is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law" as well as "when, for any other reason, the interests of the estate are likely to be jeopardized . . . ." *In re Estate of Andrews*, 92 A.3d 1226, 1230 (Pa. Super. 2014) (*quoting* 20 Pa.C.S.A. § 3182(1)(5)); *see also In re Damario's Estate*, 412 A.2d 842, 844 (Pa. 1980) (stating that "[t]he [O]rphans' [C]ourt has 'all legal and equitable powers required for or incidental to the exercise of its jurisdiction . . .'" (*citing* 42 Pa.C.S.A. § 323)).

An executor's "duty includes the responsibility to distribute the estate promptly." *In re McCrea's Estate*, 380 A.2d 773, 776 (Pa. 1977). "An administrator of an estate has the duty to take custody of the Estate and to 'preserve and protect the property for distribution to the proper persons within a reasonable time.'" *In re Beam*, 342 A.3d 7, 15 (Pa. Super. 2025) (citation omitted).

With respect to the indispensability of parties, this Court has stated:

> In general, an indispensable party is one whose rights are so connected with the claims of the litigants that no decree can be made without impairing its rights.
>
> When determining if a party is indispensable to a particular litigation, we consider the following:
>
>> 1. Do absent parties have a right or an interest related to the claim?
>>
>> 2. If so, what is the nature of that right or interest?
>>
>> 3. Is that right or interest essential to the merits of the issue?
>>
>> 4. Can justice be afforded without violating the due process rights of absent parties?
>
> If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation.

*In re Estate of Rocco*, 339 A.3d 1019, 1028 (Pa. Super. 2025).

A surviving spouse who elects to take an elective share is entitled to one-third of certain categories of the deceased spouse's property, subject to exclusions and procedural requirements. *See* 20 Pa.C.S.A. § 2203.

Joan and Thomas argue that because Joan held record title to the Residence after Thomas conveyed it to her, she was an indispensable party to any proceeding affecting that conveyance. They contend that the Orphans' Court lacked authority to invalidate the deed without joining Joan, issuing a citation, or otherwise providing notice that her ownership interest was implicated. In their view, the absence of such joinder rendered the order procedurally defective and violative of due process and the Orphans' Court

- 16 -

rules governing notice to interested parties. Joan and Thomas further claim that the Orphans' Court "elected a remedy on its own, . . . not based upon any pleading or request for relief in [Donna and Gina's petition to remove the executor, and] not permitted under Pennsylvania law." Joan's Brief at 39; **see also** Thomas' Brief at unnumbered 39. They assert that the PEF Code "disallow[ed] such judicial action on the basis of inadequate consideration; and . . . the exceptional circumstances of fraud, accident or mistake were not present here." Joan's Brief at 38; **see also** Thomas' Brief at unnumbered 38.

The Orphans' Court first found that Donna and Gina, as residuary beneficiaries, had standing to seek Thomas' removal. Notably, the Orphans' Court found that Thomas "improperly and unilaterally transferred the deed to the Residence to Joan . . . based on the value of a three[-]year[-]old appraisal and without evidence of proper consideration."[9] Orphans' Court Opinion, 2/14/25, at 13 (unnecessary capitalization omitted). The Orphans' Court concluded that Donna and Gina met their burden of proof with clear and

_____

[9] On appeal, Joan and Thomas argue that Thomas "was authorized to sell the [Residence] to Joan," and that Section 3360 of the PEF Code "specifically provides that lack of consideration is not a basis to avoid a contract." Joan's Brief at 33-34; **see also** Thomas' Brief at unnumbered 31-32. At the hearing, however, Thomas acknowledged the Residence was "switched to [Joan's] name," but denied it was "sold," explaining "[i]t was [his] understanding" that Donna and Gina "would let [their] mother live in the house." N.T., 10/16/24, at 10-11. Accordingly, to the extent Joan and Thomas now argue on appeal that Thomas properly "sold" the Residence to Joan, they have waived such a claim for failure to preserve it before the Orphans' Court. **See** Pa.R.A.P. 302(a).

convincing evidence that Thomas mismanaged the Estate — by failing to sell the Residence as required by the will, paying Joan's expenses, and improperly conveying the Residence to Joan for $1 while a removal petition was pending. *See id*. at 6-14. According to the Orphans' Court, those actions justified Thomas' removal and required restoration of the Residence to the Estate as part of the court's remedial authority. *See id*.

We conclude that the Orphans' Court acted within its statutory authority under Sections 711 and 3182 of the PEF Code. As explained above, the Orphans' Court "on its own motion may . . ." take actions necessary to protect estate assets when an executor "is wasting or mismanaging the estate, . . . or has failed to perform any duty imposed by law" as well as "when, for any other reason, the interests of the estate are likely to be jeopardized . . .." *In re Estate of Andrews*, 92 A.3d at 1230 (*quoting* 20 Pa.C.S.A. § 3182(1)(5)). Thus, contrary to Joan and Thomas' assertion, the PEF Code authorized the Orphans' Court to act to protect the Estate assets, *regardless* of whether any party requested it to do so. *See id*.

Moreover, we cannot conclude that Joan was an indispensable party to this particular proceeding. Although Joan obtained record title to the Residence as a result of Thomas' conveyance, her interest was not essential to the merits of the issue before the Orphans' Court — namely, whether Thomas breached his fiduciary duties and jeopardized Estate assets subject to the court's supervisory control. The court's order did not purport to quiet title

or finally adjudicate Joan's ownership rights. Rather, it addressed only the legal effect of Thomas' conduct as executor on the administration of the Estate. In sum, the court's order restored the Estate to its *status quo*. Accordingly, in exercising its authority to remove Thomas for mismanagement, the Orphans' Court properly invalidated the conveyance for purposes of estate administration. *See* 20 Pa.C.S.A. §§ 711, 3182.

Under these circumstances, Joan was not an indispensable party to the removal proceeding or to the ancillary relief necessary to effectuate that removal. As this Court explained in *In re Estate of Rocco*, 339 A.3d at 1028, "[i]f no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation." *Id*. Here, the Orphans' Court's decree addressed only Thomas' conduct as executor and the preservation of Estate property pending proper administration. Joan remains a beneficiary under the Decedent's will, and nothing in the court's order precludes her from asserting an independent claim to the Residence in an appropriate proceeding. *See id*. at 1028.

Furthermore, Pennsylvania law does not require an Orphans' Court to permit an executor of an estate, acting as a fiduciary, to defeat the court's supervisory authority by conveying estate property on the eve of removal proceedings and then invoking the transferee's absence as a jurisdictional shield. *See* 20 Pa.C.S.A. § 711(1). Thus, the court's findings of fiduciary mismanagement — including Thomas' unilateral conveyance of Estate

property for nominal consideration while a removal petition was pending — justified its action invalidating the conveyance to protect Estate assets. ***See*** 20 Pa.C.S.A. § 3182.

For the foregoing reasons, we conclude that the Orphans' Court acted within its statutory authority in removing Thomas as executor and in restoring the Residence to the Estate as an incident of that remedial action. We therefore affirm the Orphans' Court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/30/2026