J-S04016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DIRECT CAPITAL CORPORATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT CLAYPOOLE, DMD, PC AND ROBERT CLAYPOOLE, DMD | : | |
| | : | No. 1470 EDA 2021 |
| Appellants | : | |

Appeal from the Order Entered January 22, 2020
In the Court of Common Pleas of Montgomery County
Civil Division at 2019-00532

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                    **FILED FEBRUARY 7, 2022**

Robert Claypoole, DMD, PC, and Robert Claypoole, DMD (Claypoole) (collectively, Appellants), appeal from the order denying their petition to strike or open the $29,739.09 default judgment entered against them and in favor of Direct Capital Corporation (Direct Capital), in this case involving breach of a financing agreement.  After careful review, we affirm.

The trial court explained:

In June 2016, the parties to this matter entered into [an agreement (Agreement)] under which [Direct Capital] provided financing for Appellants' purchase of a piece of dental equipment known as a CEREC machine from CAD/CAM Hero, reportedly a reseller of CEREC machines.  The piece of dental equipment is described as a one-day visit crown inlay machine, according to [] Claypoole [].  CAD/CAM Hero has offices located in Fort Worth,

_____

* Former Justice specially assigned to the Superior Court.

Texas, and Appellants' dental practice is operated in Hatboro Township, Montgomery County.

Trial Court Opinion, 7/27/20, at 1-2. Direct Capital is a New Hampshire corporation engaged in the business of "lending, equipment leasing and corporate financing," and has its primary place of business in Portsmouth, New Hampshire. Complaint, 1/10/19, ¶ 1.

Direct Capital filed a civil complaint in Montgomery County, Pennsylvania, on January 10, 2019. Direct Capital averred Appellants "stopped making the payments under the terms of the Agreement, with a principal amount still owed in the amount of $26,037.68." *Id.* ¶ 10. Direct Capital represented, "Pursuant to the Agreement, [Appellants] are responsible to pay all costs incurred by [Direct Capital] in connection with the enforcement of the terms of the Agreement, including collection and attorney's fees." *Id.* ¶ 12. As a result of Appellants' breach, Direct Capital sought $29,739.09 in damages, interest and fees. *Id.* ¶ 13.

Direct Capital served Appellants with the complaint on January 28, 2019. On February 22, 2019, Direct Capital filed notice of its intention to seek default judgment pursuant to Pa.R.C.P. 1037. On March 13, 2019, the trial court entered the $29,739.09 default judgment against Appellants.

Appellants filed a petition to strike or open the default judgment on July 22, 2019. Thereafter,

Appellants moved for a stay of execution which was granted by order of the court dated August 27, 2019. The August 27, 2019, order directed the parties to complete any discovery they intended

to conduct concerning the issues raised in Appellants' petition to strike or open the default judgment, by September 20, 2019.

On September 26, 2019, [the trial court] issued its order denying Appellants' petition to strike or open the default judgment. On October 9, 2019, Appellants filed a Motion to Vacate Order and Reinstate Stay of Execution. The motion had several exhibits attached to it, including copies of the September 20, 2019, deposition transcripts of Judith Claypoole [(Judith)] and [] Claypoole. These depositions were part of the discovery conducted in connection with Appellants' petition to open or strike the default judgment entered on March 13, 2019. On October 11, 2019, [the trial court] granted Appellants' motion by vacating its September 26, 2019, order and reinstating the stay of execution.

On December 11, 2019, [Direct Capital] moved to vacate the stay order of October 11, 2019, and requested a decision on Appellants' petition to open or strike off the default judgment. Argument was conducted on January 22, 2020, and an order was issued that same day lifting the stay and denying Appellants' petition to strike or open the default judgment.

Trial Court Opinion, 7/27/20, at 2-3.

Appellants timely filed a notice of appeal. On February 25, 2020, the trial court entered an order requiring Appellants to file a Pa.R.A.P. 1925(b) statement, "not more than twenty-one (21) days after the entry of this order on the docket[.]" Order, 2/25/20. The court cautioned that the failure to timely file a concise statement would result in waiver of all issues. *See id.* Twenty-two days later, on March 18, 2020, Appellants filed their Rule 1925(b) concise statement.

Direct Capital subsequently filed with this Court an application to dismiss the appeal, based on Appellants' failure to timely file their Rule 1925(b)

- 3 -

concise statement.[1]  Application to Dismiss, 8/20/21, ¶¶ 30-41.  Direct Capital claimed that by untimely filing their concise statement, Appellants preserved no issues for appellate review.  *Id.* ¶ 40.  Direct Capital also argued Appellants violated "Pa.R.A.P. 2:5-2," by failing to "deposit with the clerk of the appellate court $300 to answer the costs of the appeal," or providing notice they paid the deposit.  *Id.* ¶¶ 44, 46.  As a result, Direct Capital requests the dismissal of Appellants' appeal.  *See id.* (prayer for relief).

Appellants' response was that "all of March 2020 and the months following proved to be a dizzying, confusing time riddled with government officials … scrambling to handle the COVID-19 pandemic."  Answer in Opposition to Application to Dismiss, 8/3/21, at 2.  Appellants asked this Court to take judicial notice of the various orders issued as a result of the COVID-19 pandemic.  *Id.*

We recognize that on March 16, 2020, the Pennsylvania Supreme Court declared "a general, statewide judicial emergency until April 14, 2020, on account of COVID-19."  Supreme Court of Pennsylvania No. 531 Judicial Administration Docket, Order, 3/16/20, at 1.  The order authorized president judges in the individual judicial districts to, in part, "suspend time calculations

---

[1] On September 15, 2021, this Court entered an order denying Direct Capital's application to dismiss without prejudice to raise the issue before the merits panel.  *Direct Capital Corp. v. Claypoole, DMD*, 1470 EDA 2021 (Pa. Super. filed 9/15/21) (order).  Direct Capital has presented the claim to this panel for review.  Appellee's Brief at 9.

for the purposes of time computation relevant to court cases ... as well as time deadlines[.]" ***Id.*** at 2. The Supreme Court extended and expanded the scope of the judicial emergency in several supplemental orders but directed that the emergency cease on June 1, 2020. Supreme Court of Pennsylvania Nos. 531 & 532 Judicial Administration Docket, Order, 5/27/20.

On March 16, 2020, the president judge of the Montgomery County Court of Common Pleas entered an order declaring a judicial emergency, providing:

> All statewide procedural and administrative rules involving time calculations within the 38th Judicial District for the filing of documents with the court or taking of judicially mandated action are suspended for the period of time covered by the emergency declaration. **Beginning date March 12, 2020**, ending date to be determined.

38th Judicial District Administrative Order (AD00001-2020), 3/16/20 (emphasis added). On March 31, 2020, the President Judge filed an administrative order extending the judicial emergency to April 30, 2020. Pursuant to the above orders, we deem Appellants' concise statement (due March 17, 2020, and filed March 18, 2020), to be timely filed. ***See id.***

We next address Direct Capital's assertion that this appeal should be dismissed based on Appellants' failure to pay the appeal deposit pursuant to "Pa.R.A.P. 2:5-2." Application to Dismiss, 8/20/21, at ¶¶ 42-47. There is no Pennsylvania Rule of Appellate Procedure "2:5-2." In addition, Direct Capital cites no legal authority in support of this request. We therefore deny Direct Capital's application to dismiss the appeal. ***See*** Pa.R.A.P. 2119(a) (the Rules

- 5 -

of Appellate Procedure require the argument section of an appellate brief to include "citation of authorities as are deemed pertinent.").

Appellants present the following issues for our review:

1. Should the trial court have required [Direct Capital] to file an amended complaint before entering judgment by default where the complaint omits pages containing material allegations such that it cannot be answered by a responsive pleading?

2. Did not the trial court commit an error by its refusal to strike or open a default judgment where the dominant party to a contract of adhesion disregards provisions requiring all litigation to be conducted in its chosen forum applying its choice of law?

3. Should the trial court have stricken or opened the default judgment entered by the plaintiff equipment lessor against the lessee contrary to material terms of the contract regarding choice of forum and choice of law?

Appellants' Brief at 8 (issues renumbered for disposition).

Appellants first challenge the trial court's refusal to strike or open the default judgment. *Id.* at 13, 16. Appellants claim Direct Capital did not serve Appellants with its entire complaint, as several pages were missing. *See id.* at 17. According to Appellants, it is "prejudice" to allow Direct Capital to "get away without serving a full complaint on [Appellants] … and then move for judgments (and corresponding damages), without ever providing notice of the claims." *Id.* Upon careful review, we disagree.

Preliminarily, we note that striking a default judgment and opening a default judgment are "distinct remedies and generally not interchangeable." *Green Acres Rehab. and Nursing Ctr. v. Sullivan*, 113

A.3d 1261, 1270 (Pa. Super. 2015) (quoting **Stauffer v. Hevener**, 881 A.2d 868, 870 (Pa. Super. 2005)).   We first address the denial of Appellants' petition to strike the default judgment.

An appeal from the denial of "[a] petition to strike a default judgment presents us with a question of law; consequently, our standard of review is *de novo* and our scope of review is plenary." **U.S. Bank Nat'l Ass'n for Pennsylvania Hous. Fin. Agency v. Watters**, 163 A.3d 1019, 1028 n.9 (Pa. Super. 2017).

This Court has explained,

> [a] petition to strike a judgment is a common law proceeding which operates as a demurrer to the record.  A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record.  **A petition to strike is not a chance to review the merits of the allegations of a complaint.**  Rather, a petition to strike is aimed at defects that affect the validity of the judgment and that entitle the petitioner, as a matter of law, to relief.  A fatal defect on the face of the record denies the prothonotary the authority to enter judgment. When a prothonotary enters judgment without authority, that judgment is void *ab initio*. ...

**Bank of New York Mellon v. Johnson**, 121 A.3d 1056, 1060 (Pa. Super. 2015) (citation omitted, emphasis added).  "The standard for 'defects' asks whether the procedures mandated by law for the taking of default judgments have been followed." **Continental Bank v. Rapp**, 485 A.2d 480, 483 (Pa. Super. 1984) (citation omitted).  For example, noncompliance with the Pennsylvania Rules of Civil Procedure when attempting service of process

constitutes a fatal defect. *See Cintas Corp. v. Lee's Cleaning Services, Inc.*, 700 A.2d 915, 917-18 (Pa. 1997).

Appellants do not dispute that Direct Capital properly served the complaint and afforded appropriate notice of its intent to secure a default judgment. Further, the complaint's missing pages do not implicate the trial court's jurisdiction. *See*, *e.g.*, *Sullivan*, 113 A.3d at 1268 (explaining "[a] judgment is void on its face if one or more of three jurisdictional elements is found absent: jurisdiction of the parties; subject matter jurisdiction; or the power or authority to render the particular judgment."). Finally, the complaint, even with its missing pages, notified Appellants of the claims against them. *See* Complaint, 1/10/19, ¶¶ 10, 12-13 (alleging a breach of the Agreement and a claim for $29,739.09 in damages). We therefore discern no error by the trial court in refusing to strike the default judgment based on the complaint's missing pages. *See Rapp*, 485 A.2d at 483.

Appellants also claim the trial court improperly failed to open the default judgment. Appellants' Brief at 16. Appellants again rely on their claim of missing pages in the complaint. *See id.* at 16-18.

We review the denial of a petition to open a default judgment under the following standard:

> A petition to open a default judgment is addressed to the equitable powers of the court and the trial court has discretion to grant or deny such a petition. **The party seeking to open the default judgment must establish three elements: (1) the petition to open or strike was promptly filed; (2) the default can be reasonably explained or excused; and (3) there is a**

**meritorious defense to the underlying claim**.  The court's refusal to open a default judgment will not be reversed on appeal unless the trial court abused its discretion or committed an error of law.  An abuse of discretion is not merely an error in judgment; rather it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will.  Where the equities warrant opening a default judgment, this Court will not hesitate to find an abuse of discretion.

***Scalla v. KWS, Inc.***, 240 A.3d 131, 135-36 (Pa. Super. 2020) (citations omitted, emphasis added).

The trial court did not address the first element of the test in its July 27, 2020, opinion.  Nevertheless, our review discloses that Appellants failed to demonstrate prompt filing of their petition to open.  As this Court has explained,

[t]he timeliness of a petition to open a judgment is measured from the date that notice of the entry of the default judgment is received.  The law does not establish a specific time period within which a petition to open a judgment must be filed to qualify as [timely.]  Instead, the court must consider the length of time between discovery of the entry of the default judgment and the reason for delay.

. . .

In cases where the appellate courts have found a "prompt" and timely filing of the petition to open a default judgment, the period of delay has normally been less than one month.  ***See Duckson v. Wee Wheelers, Inc.***, [] 620 A.2d 1206, 423 Pa. Super. 251 (1993) (one day is timely); ***Alba v. Urology Associates of Kingston***, [] 598 A.2d 57, 409 Pa. Super. 406 (1991) (fourteen days is timely); ***Fink v. General Accident Ins. Co.***, [] 594 A.2d 345, 406 Pa. Super. 294 (1991) (period of five days is timely).

***Myers v. Wells Fargo Bank, N.A.***, 986 A.2d 171, 176 (Pa. Super. 2009) (citation omitted); ***but see Allegheny Hydro No. 1 v. American Line***

***Builders, Inc.***, 722 A.2d 189, 193-94 (Pa. Super. 1998) (holding a 41-day delay in filing a petition to open a default judgment was untimely; collecting and setting forth cases holding delays in filing a petition to open a default judgment of 21 days and 37 days rendered those petitions untimely).

Here, the trial court entered its default judgment against Appellants on March 13, 2019. Appellants filed their petition to open over 130 days later, on July 22, 2019. ***See*** Petition to Strike or Open, 7/22/19. In their petition, Appellants did not explain their delay. ***See id.*** Similarly, at the hearing on the petition to open, Appellants presented no argument regarding the prompt filing requirement. ***See generally*** N.T., 1/22/20. Rather, Appellants relied on the complaint's omission of several pages, and a forum-selection clause in the Agreement. ***See id.*** at 7. Thus, Appellants failed to establish the prompt filing of their petition to open. ***See Scalla***, 240 A.3d at 135-36.

Regarding the second element, Appellants offered no reasonable excuse or explanation for their failure to file a timely response to Direct Capital's complaint. Although Appellants claim there are pages missing from the complaint, they did not file a preliminary objection challenging the pleading's failure to conform to the rule of law. ***See*** Pa.R.C.P. 1028(1)(2). Further, as discussed above, the complaint notified Appellants of Direct Capital's claim against them, and the basis for that claim. ***See*** Complaint, 1/10/19, ¶¶ 10, 12-13.

Finally, Appellants did not establish a meritorious defense to the underlying cause of action. *See Scalla*, *supra*. As the trial court explained:

Appellants presumably offered the Agreement and the depositions of Judith [] and [] Claypoole to show that meritorious defenses to [Direct Capital's] claim did exist. In their depositions, Judith [] and … Claypoole complained about inadequacies of the dental equipment purchased under the Agreement and efforts taken to correct or ameliorate the alleged malfunctioning of the equipment.

Despite not having attached a copy of the answer or other pleading they intended to file in the event the default was opened or stricken, pursuant to Pa.R.C.P. 237.3(a), Appellants attempted to show that they had meritorious defenses to [Direct Capital's] claims. Certain provisions of the Agreement are noteworthy, particularly Sections 2, 3, and 4 concerning the Equipment, No Warranty, and Representations, respectively. Thereunder, Appellants agreed that their obligation to make payments to [Direct Capital] was absolute and unconditional. *See* Section 4 of the Agreement concerning Representations. The parties further agreed that [Direct Capital] made no warranties as to the condition of the equipment and that [Direct Capital] was providing financing only and that Appellants were duty bound to continue to make payments under the Agreement regardless of any claim against any supplier of the equipment. *See* Section 3 of the Agreement concerning No Warranty. Moreover, Appellants understood that the only remedy they had if they found the equipment to be unsatisfactory is against the supplier or manufacturer. *See* Section 2 of the Agreement concerning Equipment.

Trial Court Opinion, 7/27/20, at 6. The record confirms the trial court's analysis and conclusion, and we discern no abuse of discretion in this regard. *See id.* Because the missing pages in the complaint provide no basis on which to strike or open the default judgment, Appellants' first issue fails.

We address Appellants' second and third issues together, as Appellants addressed the issues together in their brief. Appellants claim the trial court

improperly failed to strike or open the default judgment, because "contract principles demand that this matter be litigated in New Hampshire," and the trial court erred in ignoring this legal principle. Appellants' Brief at 13. Appellants direct our attention to the following forum-selection provision of the Agreement: "The [Agreement] is governed exclusively by the laws of New Hampshire. You agree and consent to the exclusive jurisdiction and venue of any State or Federal Court in Rockingham County, New Hampshire." *Id.* at 13-14 (citation omitted). Appellants argue this clause is enforceable because the parties agreed to the clause, and enforcement would not be unreasonable. *Id.* at 16.

Appellants do not challenge the trial court's subject matter jurisdiction over Direct Capital's cause of action. Rather, they challenge personal jurisdiction based on the forum-selection clause of the Agreement. "Personal jurisdiction is a court's power to bring a person into its adjudicative process." *Grimm v. Grimm*, 149 A.3d 77, 83 (Pa. Super. 2016) (citation omitted). Importantly, unlike subject matter jurisdiction, "personal jurisdiction is readily waivable." *Id*. Because the defense is waivable, the existence of a forum-selection clause is not a "defect" on the face of the record that precluded entry of the default judgment. *See Johnson*, 121 A.3d at 1060. Consequently, Appellants' challenge to the denial of their motion to strike based on the forum-selection clause fails.

Appellants also challenge the trial court's failure to open the default judgment based on the forum-selection clause. *See* Appellants' Brief at 13-16. As discussed above, Appellants failed to establish (1) they promptly filed their petition to open, or (2) their default can be reasonably explained. *See Scalla*, 240 A.3d 135-36. Thus, Appellants' issue does not merit relief because they failed to establish two of the three elements necessary to open a default judgment.[2] *See id.*

For the above reasons, we affirm the trial court's dismissal of Appellants' petition to strike or open the default judgment.

Appellee's Application to Dismiss denied. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2022

_____

[2] Regarding the third element, a party may challenge personal jurisdiction only by means of a preliminary objection. *Monaco v. Montgomery Cab Co.*, 208 A.2d 252, 255 (Pa. 1965); *Scoggins v. Scoggins*, 555 A.2d 1314, 1317 (Pa. Super. 1989). Appellants did not attach a proposed preliminary objection to their petition to open. *See* Pa.R.C.P. 237.3(a) (providing "[a] petition for relief from a judgment … by default … **shall have attached thereto** a copy of the … preliminary objections … which the petitioner seeks leave to file." (emphasis added)). Thus, Appellants failed to present a meritorious defense based upon the forum-selection clause. *See* Pa.R.C.P. 1032 (stating that a party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except any nonwaivable defense or objection).

- 13 -